## INTERNATIONAL TEXT-BOOK COMPANY, Appellant, v. CHARLES R. GILLESPIE.

### Division One, June 22, 1910.

1. **FOREIGN CORPORATIONS: License: Interstate Commerce.** The statutes (Secs. 1024, 1025, 1026, R. S. 1899) which require foreign corporations to maintain an office in this State and file a copy of their charters and a statement of their capital and of the amount employed in this State, with the Secretary of State, as precedent conditions to their right to do business in this State and to sue in its courts, do not apply to corporations engaged in interstate commerce, and as to them are unconstitutional and void.

2. ——: ——: **Correspondence School.** A corporation of Pennsylvania, engaged in conducting a correspondence school, which sells instruction to students in this State, supplying them by mail with text-books (which they are not required to buy), papers and answers to questions, obtaining from them written contracts which are transmitted by mail to Pennsylvania to be approved and signed, and money which must also be transmitted before the contract becomes binding, although maintaining in this State a district superintendent, nine division superintendents, and three solicitors in each division, and one district office and nine division offices in which are clerks and stenographers, is engaged in interstate commerce, and therefore is not required to comply with said statutes in order to be entitled to maintain, in the courts of this State, a suit on a contract with one of its students, a citizen of this State.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

REVERSED AND REMANDED.

*Hall & Dame* for appellants; *David C. Harrington* of counsel.

(1)   Appellant's operations in this State do not constitute doing business within the meaning of statutes relative to foreign corporations.   The following points cover the whole scope of appellant's activities in this State:   (a)   The soliciting of enrollments for courses of instruction is not doing business.   Beard v. Publishing Co., 71 Ala. 60; Steel Tube v. Riehl, 9 Pa. Sup. 220; Union v. Yaunt, 101 U. S. 352; State v. Looney, 214 Mo. 216; Hogan v. St. Louis, 176 Mo. 149.   (b)   The making of collections of payments on account of scholarships is not doing business.   Beard v. Publishing Co., 71 Ala. 60; State v. Looney, supra; Hovens v. Diamond, 93 Ill. App. 557.   (c)   Having a local office is not *per se* doing business. People ex rel. v. Campbell, 139 N. Y. 68; Plow Co. v. Peterson, 101 N. W. 616.   (d)   The making of contracts in another State with citizens of this State is not doing business in this State.   Amusement Co. v. Forest Park, 192 Mo. 404; State v. Book Co., 69 Kas. 1; Milliken v. Fullerton, 91 N. Y. S. 1104; Plow Co. v. Peterson, 101 N. W. 616; Mfg. Co. v. Frizzell, 81 Pac. 58; Holder v. Aultman, 169 U. S. 81.   (e)   Contracts which must be accepted in another State before becoming binding are made in such other State and are valid and enforceable in this State.   Holder v. Aultman, 169 U. S. 81; Scruggs v. Mortgage Co., 54 Ark. 566; 9 Cyc. 670. (f)   The making of a contract even in this State is not doing business in this State.   Hogan v. St. Louis, 176 Mo. 149.   (g)   The appointing of agents is not doing business.   Bank v. Leeper, 121 Mo. App. 688; Morgan v. White, 101 Ind. 413.   (h)   Advertising is not doing business.   State v. Book Co., 69 Kas. 1. (i) The selling of commodities in this State, which are afterwards and in pursuance of such sale to be sent into this State from another State, is not doing business in this State, but is interstate commerce and not subject

to regulation by statutes of this State. Corn v. Hogan, 74 S. W. (Ky.) 737; Packet Co. v. Holder, 68 Fed. 467; State Freight Tax, 15 Wall. 264; McCall v. California, 136 U. S. 104; Railroad v. Pennsylvania, 136 U. S. 114; Hooper v. California, 155 U. S. 648; Oil Co. v. Texas, 177 U. S. 46; Connolly v. Railroad, 184 U. S. 558; 17 Am. and Eng. Ency. Law (2 Ed.), 75 and 106; Mfg. Co. v. Frizzell, 81 Pac. (Ida.) 58; Sponge Co. v. Drug Co., 102 N. W. (Wis.) 888; Mason v. Edward Thompson Co., 103 N. W. (Minn.) 507; Davis v. Dix, 64 Fed. 406; Minnesota v. Barber, 136 U. S. 313; State v. Looney, 214 Mo. 216. (j) The enforcement of a contract after it is made is not doing business. If this were not the law, no contract of any foreign corporation could be enforced without complying with the statutes, and the effects of comity would be *nil.* 13 Am. and Eng. Ency. Law (2 Ed.), 869; Christian v. Amer., etc., 89 Ala. 198; Texas Co. v. Worsham, 76 Tex. 556; Conn. Co. v. Way, 62 N. H. 622; L. & T. Co. v. Clifford, 90 Minn. 358; McMillan Co. v. Stewart, 54 All. (N. J.) 240; Miller v. Goodman, 91 Tex. 41; Milan Co. v. Garten, 93 Tenn. 590; Beale, Foreign Corps., sec. 209. (2) If the business and transactions of appellant, as shown by the evidence, are within the purview of the statutes of Missouri relating to foreign corporations, to-wit, of sections 1024-5-6, R. S. 1899, the provisions of such statutes are violative of the commerce clause of the Federal Constitution and void as to appellant. Shoe Co. v. Rubber Co., 156 Fed. 1; Mfg. Co. v. Ferguson, 113 U. S. 727; Robbins v. Taxing Dist., 120 U. S. 489; Asher v. Texas, 128 U. S. 129; Stontenburg v. Hennick, 129 U. S. 140; Lyng v. Michigan, 135 U. S. 161; Crutcher v. Kentucky, 141 U. S. 47; Brennan v. Titusville, 153 U. S. 289; Stockard v. Morgan, 185 U. S. 27; Caldwell v. North Carolina, 187 U. S. 622; Conolly v. Railroad, 184 U. S. 558; Mfg. Co. v. Dix, 64 Fed. 406; Tel. Co. v. Kansas, 30 U. S. 190; Pullman Co. v. Kansas, 30 U. S. 232.

*Roy M. Eilers, John W. Calhoun* and *Lester I. Heyman* for respondent.

(1) A foreign corporation engaged in transacting business in this State, without having complied with our laws respecting foreign corporations, cannot enforce an executory contract growing out of such unlawful business. The cause of action is void. R. S. 1899, secs. 1024-25-26; McCanna v. Trust Co., 24 U. S. C. C. A. 11; Rubber Co. v. Shoe Co., 132 Fed. 198; Insurance Co. v. Harvey, 11 Wis. 394; Assurance Co. v. Rosenthal, 55 Ill. 85; Hoffman v. Banks, 41 Ind. 1; Williams v. Scullin, 59 Mo. App. 30; Heating Co. v. Fixture Co., 60 Mo. App. 148; Carson-Rand Co. v. Stern, 129 Mo. 381; Ehrhardt v. Robertson Bros., 78 Mo. App. 404; Hogan v. St. Louis, 176 Mo. 149; Tri-State Co. v. Amusement Co., 192 Mo. 404. (2) Even though the business of appellant corporation should come within the meaning of the term interstate commerce, it has so entered the State of Missouri that it becomes amenable to the provisions of sections 1024-5-6, R. S. 1899. Fay Fruit Co. v. McKinney, 103 Mo. App. 304; Ehrhardt v. Robertson Bros., 78 Mo. App. 404; Williams v. Scullin, 59 Mo. App. 30; Commonwealth v. Schoelenberger, 156 Pa. St. 201; Preston v. Farley, 72 F. R. 850. (3) The evidence submitted to the lower trial court and the finding of such court conclusively show that the transactions which the appellant corporation conducts within the State come within the meaning of the term "doing business" so as to compel the appellant to comply with the provisions of sections 1024-5-6, R. S. 1899. Fay Fruit Co. v. McKinney, 103 Mo. App. 204; People v. Mining Co., 105 N. Y. 76; Caesar v. Capell, 83 F. R. 403; Smythe v. Assurance Co., 35 How. Prac. (N. Y.) 126; Price v. Ins. Co., 3 Mo. App. 262; Indem. Co. v. Jarman, 187 U. S. 197; Ins. Co. v. Smith, 19 Mo. App. 627. (4) The business in which appellant corporation is engaged, and which

is authorized by its charter, is not such as comes within the meaning of the term interstate commerce. State v. Morgan, 48 N. W. 314; Dorsey v. Conn. Mut., 108 Tenn. 567; Paul v. Virginia, 75 U. S. 168.

WOODSON, J.—This suit was instituted by the appellant, a foreign corporation, against the respondent, before a justice of the peace in the city of St. Louis, to recover the sum of $61.20, alleged to be due it on a certain contract mentioned in the complaint filed with the justice.

A trial was had before the justice, which resulted in a judgment in favor of the respondent, and from that judgment the appellant appealed to the circuit court. The trial had in the latter court also resulted in a judgment in favor of the respondent, from which the appellant duly appealed to this court.

The facts will sufficiently appear from the findings made and filed in the cause by the trial court, which are as follows:

"The court finds the facts in the case to be as follows:

"That the plaintiff is a corporation organized and doing business under and by virtue of the laws of the State of Pennsylvania, and is authorized, among other things, to originate, write, compile, illustrate, edit, publish and sell instruction papers, text-books, drawing plates, periodicals, magazines, pamphlets, articles and letters for the dissemination of literature, technical education and other information; that the principal executive officers of said corporation reside in Pennsylvania and exercise their functions as such at Scranton; that the plaintiff conducts what it designates as International Correspondence Schools.

"Its method of conducting such schools is to furnish students in various parts of the country with text-books, and written instruction and question papers are

229 Sup—26

delivered to the students from time to time through the United States mails; that such instruction papers are furnished for pay by parties with whom the plaintiff makes written contracts; that all the contracts of said plaintiff for scholarship with parties residing in this State are addressed by the proposed students to the plaintiff at Scranton, Pennsylvania, and are subject to final acceptance or rejection by the officers of said plaintiff there; that the plaintiff conducts what it designates as International Correspondence Schools; that all instruction and question papers of said corporation are prepared at Scranton, and are sent from there through the mails to the respective students of the plaintiff residing in this State; that the money paid by such students on account of instruction ·or scholarships is received, in most cases, in the first instance, by agents of the plaintiff called solicitors or representatives of the district in which the students reside and thereupon remitted by such solicitor, or representatives, to the superintendent of the plaintiff at Cincinnati, Ohio, and deposited in a bank at Newport, Kentucky, to the credit of the plaintiff; that the text-books used for instructing students after their contracts are accepted are sent by the plaintiff from Scranton direct to the student as provided in said contract; that offices or agencies of the plaintiff are maintained in this State for the purpose of furnishing and conducting the sale of scholarships and securing the purchase thereof in the manner hereinafter set forth; that the plaintiff's method of doing business is to divide the country in which it operates into districts and the districts into divisions. The districts are put under the supervision of a local superintendent, and under him, in each division in each district, is a division superintendent, and under each such division superintendent are three or four solicitors.

"Plaintiff, some years ago, established the 'St. Louis district,' consisting of the State of Missouri, a

part of Illinois and a part of Arkansas, and divided
this State into some twenty divisions, in nine or ten of
which they have division superintendents, with three
solicitors under each, all of whom reside in this State
and in their respective divisions, their work being con-
fined to their respective divisions.  The city of St.
Louis is divided into three divisions, in each of which
plaintiff maintains an office occupied by the division
superintendent and the solicitors.  In these offices the
plaintiff keeps for display advertising matter, text-
books, instruction papers and so forth.  The plaintiff
maintains one principal office in the city of St. Louis,
which is occupied by its chief representative or dis-
trict superintendent, who has general control over the
business of the plaintiff in the St. Louis district.  He
makes the agreements for the employment of division
superintendents and solicitors, and when such agree-
ments have been reached the written contract of em-
ployment in pursuance thereof is signed here by the
employee and forwarded by said superintendent to the
company at Scranton for signature and when so sign-
ed it becomes binding.  He has a general supervision
over all these employees and directs and superintends
their work.  Plaintiff has, in addition to the above, in
its employ in the city of St. Louis, in its various offices,
stenographers and clerks in its charge solely occupied
in their respective duties as plaintiff's employees.  All
of the above mentioned employees of the plaintiff are
residents of the State of Missouri and render all ser-
vices in behalf of plaintiff's business solely in the lo-
calities in the divisions to which they are assigned.
None of the above mentioned employees travel in be-
half of the plaintiff's business out of the several di-
visions to which they are assigned, and none of them
are traveling salesmen or drummers.

   ''Plaintiff conducts its business in this State as
follows:  The canvasser or soliciting agent attached
to one of the divisions of plaintiff goes among the resi-

dents of each division and solicits applications for instruction under plaintiff's correspondence schemes. The canvasser, upon finding one who is willing to become a student, secures the signature of the student to an application blank and at the same time collects from the signer a sum of money to be credited as part payment of the entire charge for the course of instruction selected by the prospective student. The signed application thus obtained is forwarded by the canvasser to the home office of the plaintiff, at Scranton, Pennsylvania, and a duplicate copy thereof turned into the office of the general superintendent in St. Louis and another copy retained by the canvasser himself. The money secured by the canvasser is forwarded by him to the division treasury office at Cincinnati, Ohio, and a memorandum of the collection turned in to the general superintendent in St. Louis. If the application forwarded by the canvasser to the home office is in due accord with plaintiff's instructions, the same is approved by plaintiff, and the first installment of instruction and question papers pertaining to the course selected is forwarded to the student by mail. Upon the receipt of the instruction papers the student prepares his answers to the questions propounded in the papers, makes in writing such answers as he thinks proper, and asks such questions and makes such comments as to him may seem fit upon such branches of the subject as he may desire further or more particular instructions, which he forwards by mail to Scranton, and the instructors of the company at Scranton forward through the mails to him such further instructions and suggestions as they think proper in the matter, and the same process is repeated until the course is finished.

"The employees of plaintiff invite prospective students to call at the branch offices of plaintiff in Missouri to inspect the books and papers pertaining to their course of instruction; the employees of plaintiff

invite students to call at the branch offices of plaintiff in Missouri where they are given aid in the preparation of their papers; the instruction books and papers furnished by plaintiff to students are only loaned the students during the time of pursuing their studies and become their property only upon completion of the course and full payment therefor.

"The rent and all other expenses, except incidental expenses, of the establishments maintained by the plaintiff in the city of St. Louis are paid by check of plaintiff remitted to the general superintendent at St. Louis and by said superintendent delivered to the proper parties.

"All the salaries of the employees of plaintiff in the city of St. Louis are paid in the same way. The general superintendent located in the city of St. Louis keeps on hand a small sum of money belonging to plaintiff for the payment of incidental expenses such as express charges and other small items.

"Plaintiff has never filed in the office of the Secretary of State of Missouri a certified copy of its charter, articles of incorporation or certificate of incorporation, nor has it forwarded to the Secretary of State of Missouri a statement duly sworn to of the proportion of the capital stock of said corporation which is represented by its property located and business transacted in the State of Missouri, nor paid into the treasury of the State of Missouri any incorporation taxes or fees, nor has it received from the Secretary of State of Missouri a certificate authorizing said corporation to do business in said State and has in no wise complied with the laws of this State.

"On or about the 1st of November, 1905, the defendant, Charles R. Gillespie, signed, in the State of Missouri, a written agreement with plaintiff, which was accepted by the plaintiff company at Scranton, Pennsylvania, about November 11, 1905, which agreement is filed with the pleadings and marked 'Exhibit

A' and made the basis of this suit, and said agreement was entered into and the transactions relating thereto were done in the manner above set forth as plaintiff's method of securing and enrolling students in this State.

"Said defendant paid thereon in accordance with its terms, the sum of ten dollars, and was notified of such acceptance as above stated and received from plaintiff by mail a certificate of scholarship for the course of instruction named in said contract.

"Defendant has made no other payments upon said contract; plaintiff has duly demanded of the defendant that he pay plaintiff the sum due upon said contract before suit; because of the defendant not making payment of installments as they fell due the plaintiff exercised its option to declare the whole sum to be due before suit was brought. Plaintiff has complied with the terms and conditions of the said contract, furnished instructions and loaned volumes to the defendant in accordance with the said contract, so far as plaintiff was permitted by defendant so to do.

"There remains unpaid on said contract, according to its terms, the sum of $61.20."

Counsel for appellant excepted to that part of the court's finding which states that the students were given aid in the preparation of their papers at the branch offices of appellant. After a careful reading of the record, we are of the opinion that the trial court erred in that finding. The finding should have been that said aid, if any, so rendered to the students, was voluntary on the part of appellant's agents and was not authorized or required of them, and constituted no part of their duty under the contract mentioned, and was no part of its corporate purpose.

Plaintiff asked the court to give the following declarations of law:

"1.    That the plaintiff is a foreign corporation; that its transactions in this State are of such a nature

as does not require a compliance with the statute of this State which provides for the filing by foreign corporations doing business in this State of their articles of incorporation or charter with the Secretary of State of this State, or with other provisions of the statute or statutes of this State relating to foreign corporations doing or transacting business in this State.

"2. That plaintiff's business and transactions with persons in this State are comprised within the meaning of the words 'commerce among the several States' as used in the Federal Constitution, and are, therefore, interstate commerce and not subject to State regulations, and not within the purview of the statutes of this State relating to foreign corporations doing business in this State; and that if such business and transactions of the plaintiff are within the purview of the statutes, the provisions of such statutes are violative of the commerce clause of the Federal Constitution and void as to plaintiff.

"3. That the plaintiff is entitled to maintain this action without complying with the law of this State relative to foreign corporations.

"4. That the plaintiff is entitled to judgment against the defendant for the sum of $61.20 in accordance with the facts and conclusions of law.

"5. That plaintiff is entitled to his costs herein incurred."

All of which the court refused, and appellant duly excepted.

The following are the conclusions of law given by the court, viz: "I conclude from the above facts that plaintiff is doing business in this State of Missouri, and not having complied with the laws of this State to enable it to do so lawfully is not entitled to maintain its action in this court. I also conclude from said found facts that defendant is not entitled to recover

on his counterclaim. Judgment will be rendered accordingly.''

To all of which appellant duly excepted.

I. The legal propositions involved in this case have been recently passed upon by the Supreme Court of the United States in the case of this appellant, the International Text-Book Company v. Aaron T. Pigg. The opinion was handed down April 4, 1910, but not yet reported.

The facts of that case and the statutes there under consideration were substantially the same as are the facts of this case and the statutes involved here. The only material difference between the two cases being, the defendant there was one Pigg who resided in the State of Kansas, and the statutes under consideration were enactments of that State, while here the defendant is one Gillespie, a resident of this State, and the statutes involved, sections 1024, 1025 and 1026, Revised Statutes 1899, are enactments of this State.

These sections in so far as they are relevant to this case read as follows:

''Sec. 1024. Every corporation for pecuniary profit formed in any other State, territory or country, before it shall be authorized or permitted to transact business in this State, or to continue business therein, if already established, shall have and maintain a public office or place in this State for the transaction of its business, where legal service may be obtained upon it, and where proper books shall be kept to enable such corporation to comply with the constitutional and statutory provisions governing such corporation; and such corporation shall be subjected to all the liabilities, restrictions and duties which are or may be imposed upon corporations of like character organized under the general laws of this State, and shall have no other or greater powers.

"Sec. 1025. Every company incorporated for purposes of gain under the laws of any other State, territory or country, now or hereafter doing business within this State, shall file in the office of the Secretary of State a copy of its charter or articles of incorporation, or, in case such company is incorporated merely by a certificate, then a copy of its certificate of incorporation, duly certified and authenticated by the proper authority; and the principal officer or agent in Missouri of the said corporation shall make and forward to the Secretary of State, with the articles or certificate above provided for, a statement duly sworn to of the proportion of the capital stock of the said corporation which is represented by its property located and business transacted in the State of Missouri, and such corporation shall be required to pay into the treasury of this State, upon the proportion of its capital stock represented by its property and business in Missouri, incorporating taxes and fees equal to those required of similar corporations formed within and under the laws of this State. Upon compliance with the above provisions by said corporation, the Secretary of State shall give a certificate that said corporation has duly complied with the laws of this State, and is authorized to do business therein, stating the amount of its entire capital and of the proportion thereof which is represented in Missouri; and such certificate shall be taken by all courts in this State as evidence that the said corporation is entitled to all the rights and benefits of this act, and such corporation shall enjoy those rights and benefits for the time set forth in its original charter or articles of association, unless this shall be for a greater length of time than is contemplated by the laws of this State, in which event the time of duration shall be reckoned from the creation of the corporation to the limit of time set out in the laws of this State.

"Sec. 1026. Every corporation for pecuniary profit, formed in any other state, territory or country, now doing business in or which may hereafter do business in this State, which shall neglect or fail to comply with the conditions of this law, shall be subject to a fine of not less than $1,000, to be recovered before any court of competent jurisdiction; and it is hereby made the duty of the Secretary of State, immediately after August 1, of the year 1891, and as often thereafter as he may be advised that corporations are doing business in contravention to this act, to report the fact to the prosecuting attorney of the county in which the business of such corporation is located, and the prosecuting attorney shall, as soon thereafter as is practicable, institute proceedings to recover the fine herein provided for, which shall go into the revenue fund of the county in which the cause shall accrue; in addition to which penalty, on and after the going into effect of this act no foreign corporation as above defined, which shall fail to comply with this act, can maintain any suit or action, either legal or equitable, in any of the courts of this State, upon any demand, whether arising out of contract or tort: Provided, that the provisions of this section shall not apply to railroad companies which have heretofore built their lines of railway into or through this State; nor to 'drummers' or traveling salesmen soliciting business in this State for foreign corporations which are entirely non-resident."

Consequently, what was there said regarding the constitutionality of those statutes is applicable to the facts of this case and is binding upon this court in the case at bar.

We will, therefore, quote largely from the opinion of Mr. Justice HARLAN, who spoke for the court in that case.

Beginning, he said: "This action was brought by the International Text-Book Company in one of the

courts of Kansas—the court of Topeka—to recover from Pigg, the defendant in error, the sum of $79.60, with interest, as due the plaintiff under a written contract between him and that company, made in 1905. The case was tried upon agreed facts, and judgment was rendered in favor of the defendant for his costs. That judgment was affirmed in a state district court, which held that the plaintiff was not entitled to maintain the action, and the latter judgment was affirmed by the Supreme Court of Kansas.

"It is assigned for error that the final judgment—based upon certain provisions of the statutes of Kansas, to be presently referred to—was in violation of the company's rights under the Constitution of the United States.

"The facts agreed to—using substantially the language of the parties—make substantially the following case:"

Then follows a copy of the agreed statement of facts, which are substantially the same as are the facts of this case.

Proceeding the court said: "We will now refer to the provisions of the Kansas statute under which the Text-Book Company was held not to be entitled to maintain the present action in the courts of the State. The statute, the plaintiff alleges, cannot be applied to it without violating its rights under the Constitution of the United States."

Then follows a summary of sections 1260, 1261, 1263 and 1264 of the Kansas Revised Statutes of 1901, and the remarks of the court holding that they applied to the plaintiff in that case, and that it was doing business in that State within the meaning of those statutes, as well as certain other observations of the court, which have no particular application to the case at bar.

Continuing the court said: "But the section which controlled the decision by the State court in the

present case is section 1283, which is as follows: 'It shall be the duty of the president and secretary or of the managing officer of each corporation for profit, doing business in this State, except banking, insurance and railroad corporations, annually, on or before the 1st day of August, to prepare and deliver to the Secretary of State a complete detailed statement of the condition of such corporation on the 30th day of June next preceding. Such statement shall set forth and exhibit the following, namely: 1st. The authorized capital stock. 2d. The paid-up capital stock. 3d. The par value and the market value per share of said stock. 4th. A complete and detailed statement of the assets and liabilities of the corporation. 5th. A full and complete list of the stockholders, with the postoffice address of each, and the number of shares held and paid for by each. 6th. The names and postoffice addresses of the officers, trustees or directors and manager elected for the ensuing year, together with a certificate of the time and manner in which such election was held. . . and the failure of any such corporation to file the statement in this section provided for within ninety days from the time provided for filing the same shall work the forfeiture of the charter of any corporation organized under the laws of this State, and the charter board may, at any time thereafter, declare the charter of such corporation forfeited; and upon the declaration of any such forfeiture, it shall be the duty of the Attorney-General to apply to the district court of the proper county for the appointment of a receiver to close out the business of such corporation; and such failure to file such statement by any corporation doing business in this State, and not organized under the laws of this State, shall work a forfeiture of its right or authority to do business in this State, and the charter board may at any time declare such forfeiture, and shall forthwith publish such declaration in the official State paper. . .

No action shall be maintained or recovery had in any of the courts of this State by any corporation doing business in this State without first obtaining the certificate of the Secretary of State that statements provided for in this section (sec. 1283) have been properly made.' [Laws 1898, ch. 10, sec. 12, as amended by Laws 1901, ch. 125, sec. 3.]

"But this view as to the meaning of the Kansas statute does not necessarily lead to an affirmance of the judgment below if, as the plaintiff contends, the business in which it is regularly engaged is interstate in its nature, and if the statute, by its necessary operation, materially or directly burdens that business.

"It is true that the business in which the International Text-book Company is engaged is of a somewhat exceptional character, but, in our judgment, it was, in its essential characteristics, commerce among the States within the meaning of the Constitution of the United States. It involved, as already suggested, regular and practically continuous intercourse between the Text-book Company, located in Pennsylvania, and its scholars and agents in Kansas and other States. That intercourse was conducted by means of correspondence through the mails with such agents and scholars. While this mode of imparting and acquiring an education may not be such as is commonly adopted in this country, it is a lawful mode to accomplish the valuable purpose the parties have in view. More than that; this mode—looking at the contracts between the Text-book Company and its scholars—involved the transportation from the State where the school is located to the State in which the scholar resides, of books, apparatus and papers, useful or necessary in the particular course of study the scholar is pursuing, and in respect of which he is entitled, from time to time, by virtue of his contract, to information and direction. Intercourse of that kind, between parties in different States—particularly when it is in

execution of a valid contract between them—is as much intercourse, in the constitutional sense, as intercourse by means of the telegraph—'a new species of commerce,' to use the words of this court in Pensacola Telegraph Co. v. Western Union Telegraph Co., 96 U. S. 1, 9. In the great case of Gibbons v. Ogden, 9 Wheat. 1, 189, this court, speaking by Chief Justice MARSHALL, said: 'Commerce, undoubtedly, is traffic, but it is something more: it is intercourse.' Referring to the constitutional power of Congress to regulate commerce among the States and with foreign countries, this court said in the Pensacola case, just cited, that 'it is not only the right but the duty of Congress to see to it that intercourse among the States and the transmission of intelligence are not obstructed or unnecessarily encumbered by State legislation.' This principle has never been modified by any subsequent decision of this court.

"The same thought was expressed in Western Union Tel. Co. v. Pendleton, 122 U. S. 347, 356, where the court said: 'Other commerce deals only with persons, or with visible and tangible things. But the telegraph transports nothing visible and tangible; it carries only ideas, wishes, orders and intelligence.' It was said in the Circuit Court of Appeals for the Eighth Circuit, speaking by Judge SANBORN, in Butler Bros. Shoe Co. v. United States Rubber Co., 156 Fed. 1, 17, that 'all interstate commerce is not sales of goods. Importation into one State from another is the indispensable element, the test, of interstate commerce; and every negotiation, contract, trade, and dealing between citizens of different States, which contemplates and causes such importation, whether it be of goods, persons, or information, is a transaction of interstate commerce.' If intercourse between persons in different States by means of telegraphic messages conveying intelligence or information is commerce among the States, which no State may directly

burden or unnecessarily encumber, we cannot doubt that intercourse or communication between persons in different States, by means of correspondence through the mails, is commerce among the States within the meaning of the Constitution, especially where, as here, such intercourse and communication really relate to matters of regular, continuous business, and to the making of contracts and the transportation of books, papers, etc., appertaining to such business. In our further consideration of this case we shall therefore assume that the business of the Text-book Company, by means of correspondence through the mails and otherwise between Kansas and Pennsylvania, was interstate in its nature.

"We must next inquire whether the statute of Kansas, if applied to the International Text-book Company, would directly burden its right by means of correspondence through the mails and by its agents, to secure written agreements with persons in other States, whereby such persons, for a valuable consideration, contract to pay a given amount for scholarships in its Correspondence Schools, and to have sent to them, as found necessary, from time to time, books, papers, apparatus and information, needed in the prosecution, in their respective States, of the particular study which the scholar has elected to pursue under the guidance of those who conduct such schools at Scranton? Let us see what effect the statute, by its necessary operation, must have on the conduct of the company's business.

"In the first place, it is made a condition precedent to the authority of a corporation of another State, except banking, insurance and railroad corporations, to do business in Kansas, that it shall prepare, deliver and file with the Secretary of State a detailed 'statement' showing the amount of the authorized, paid-up, par and market value of, its capital stock, its assets and liabilities, a list of its stockholders, with

their respective postoffice addresses and the shares held and paid for by each, and the names and post-office addresses of the officers, trustees, or directors and managers.

"In the next place, the statute denies to the corporation doing business in Kansas the right to maintain an action in a Kansas court, unless it shall first obtain a certificate of the Secretary of State to the effect that the statement, required by section 1283, has been properly made.

"Was it competent for the State to prescribe, as a condition of the right of the Text-book Company to do interstate business in Kansas, such as was transacted with Pigg, that it should prepare, deliver and file with the Secretary of State the statement mentioned in section 1283? The above question must be answered in the negative upon the authority of former adjudications by this court. A case in point is Crutcher v. Kentucky, 141 U. S. 47, 56, 57, often referred to and never qualified by any subsequent decision. That case arose under a statute of Kentucky regulating agencies of foreign express companies. The statute required as a condition of the right of the agent of an express company not incorporated by the laws of Kentucky, to do business in that Commonwealth, to take out a license from the State Auditor, and to make and file in the Auditor's office a statement showing that the company had an actual capital of a given amount, either in cash or in safe investments, exclusive of costs. These requirements were held by this court to be in violation of the Constitution of the United States in their application to foreign corporations engaged in interstate commerce. The court said: 'If the subject was one which appertained to the jurisdiction of the State Legislature, it may be that the requirements and conditions of doing business within the State would be promotive of the public good. It is clear, however, that it would be a regulation of in-

terstate commerce in its application to corporations or associations engaged in that business; and that is a subject which belongs to the jurisdiction of the National, and not the State, Legislature. Congress would undoubtedly have the right to exact from associations of that kind any guaranties it might deem necessary for the public security, and for the faithful transaction of business; and as it is within the province of Congress, it is to be presumed that Congress has done, or will do, all that is necessary and proper in that regard. Besides, it is not to be presumed that the State of its origin has neglected to require from any such corporation proper guaranties as to capital and other securities necessary for the public safety. If a partnership firm of individuals should undertake to carry on the business of interstate commerce between Kentucky and other States, it would not be within the province of the State Legislature to exact conditions on which they should carry on their business, nor to require them to take out a license therefor. To carry on interstate commerce is not a franchise or a privilege granted by the State; it is a right which every citizen of the United States is entitled to exercise under the Constitution and laws of the United States; and the accession of mere corporate facilities, as a matter of convenience in carrying on their business, cannot have the effect of depriving them of such right, unless Congress should see fit to interpose some contrary regulation on the subject.' Again, in the same case: 'Would any one pretend that a state legislature could prohibit a foreign corporation—an English or a French transportation company, for example—from coming into its borders and landing goods and passengers at its wharves, and soliciting goods and passengers for a return voyage, without first obtaining a license from some State officer, and filing a sworn state-

ment as to the amount of its capital stock paid in?
And why not? Evidently because the matter is not
within the province of State legislation, but within that
of national legislation.' Further, in the same case:
'We do not think that the difficulty is at all obviated
by the fact that the express company, as incidental to
its main business (which is to carry goods between
different States), does also some local business by car-
rying goods from one point to another within the State
of Kentucky. This is, probably, quite as much for the
accommodation of the people of that State as for the
advantage of the company. But whether so or not, it
does not obviate the objection that the regulations as
to license and capital stock are imposed as conditions
on the company's carrying on the business of inter-
state commerce, which was manifestly the principal
object of its organization. These regulations are
clearly a burden and a restriction upon that commerce.
Whether intended as such or not, they operate as such.
But taxes or license fees, in good faith imposed ex-
clusively on express business carried on wholly within
the State, would be open to no such objection.' To the
same general effect are many other cases. [Robbins
v. Taxing District, 120 U. S. 489; Leloup v. Mobile, 127
U. S. 640; Stoutenburgh v. Hennick, 129 U. S. 141;
Lyng v. Michigan, 135 U. S. 166; McCall v. California,
136 U. S. 104; Railroad v. Pennsylvania, 136 U. S.
114; Western Union Tel. Co. v. Kansas, 216 U. S. 1.]
It is true that the statute does not, in terms, require
the corporation of another State engaged in interstate
commerce to take out what is technically 'a license' to
transact its business in Kansas. But it denies all au-
thority to do business in Kansas unless the corporation
makes, delivers and files a 'statement' of the kind
mentioned in section 1283. The effect of such require-
ment is practically the same as if a formal license was
required as a condition precedent to the right to do
such business. In either case it imposes a condition

upon a corporation of another State seeking to do business in Kansas, which, in the case of interstate business, is a regulation of interstate commerce and directly burdens such commerce. The State cannot thus burden interstate commerce. It follows that the particular clause of section 1283 requiring that 'statement' is illegal and void.

"In this connection it is to be observed that by the statute the doors of Kansas courts are closed against the Text-book Company, unless it first obtains from the Secretary of State a certificate showing that the 'statement' mentioned in section 1283 has been properly made. In other words, although the Text-book Company may have a valid contract with a citizen of Kansas, one directly arising out of and connected with its interstate business, the statute denies its right to invoke the authority of a Kansas court to enforce its provisions unless it does what we hold it was not, under the Constitution, bound to do, namely, make, deliver and file with the Secretary of State the statement required by section 1283. If the State could, under any circumstances, legally forbid its courts from taking jurisdiction of a suit brought by a corporation of another State, engaged in interstate business, upon a valid contract arising out of such business and made with it by a citizen of Kansas, it could not impose on the company, as a condition of its authority to carry on its interstate business in Kansas, that it shall make, deliver and file that statement with the Secretary of State, and obtain his certificate that it has been properly made. This court held in Chambers v. Baltimore & Ohio R. R. Co., 207 U. S. 142, 148, that a State may, subject to the restrictions of the Federal Constitution, 'determine the limits of the jurisdiction of its courts, and the character of the controversies which shall be heard in them.' But it also said in the same case: 'The right to sue and defend in the courts is the alternative of force. In an organized society it is the right

conservative of all other rights, and lies at the foundation of orderly government. It is one of the highest and most essential privileges of citizenship, and must be allowed by each State to the citizens of all other States to the precise extent that it is allowed to its own citizens. Equality of treatment in this respect is not left to depend upon comity between the States, but is granted and protected by the Federal Constitution.' How far a corporation of one State is entitled to claim in another State, where it is doing business, equality of treatment with individual citizens in respect of the right to sue and defend in the courts, is a question which the exigencies of this case do not require to be definitely decided. It is sufficient to say that the requirement of the statement mentioned in section 1283 of the statute imposes a direct burden on the plaintiff's right to engage in interstate business, and therefore is in violation of its constitutional rights. It is the established doctrine of this court that a State may not, in any form or under any guise, directly burden the prosecution of interstate business. But such a burden is imposed when the corporation of another State, lawfully engaged in interstate commerce, is required, as a condition of its right to prosecute its business in Kansas, to make and file a statement setting forth certain facts which the State, confessedly, could not control by legislation. It results that the provision as to the statement mentioned in section 1283 must fall before the Constitution of the United States, and with it— according to the established rules of statutory construction—must fall that part of the same section which provides that the obtaining of the certificate of the Secretary of State that such statement has been properly made shall be a condition precedent to the right of the plaintiff to maintain an action in the courts of Kansas. Section 1283, looking at the object for which it was enacted, must be regarded as an entirety. These parts of the statute are so connected

with and dependent upon each other that the clause relating to actions brought in the courts of Kansas cannot be separated from the prior clause in the same section, referring to the statement to be filed with the Secretary of State, and the former left in force after the latter is stricken down as invalid. As the clause about suits in the courts of Kansas expressly refers to the prior clauses in the same section prescribing the statement to be filed with the Secretary of State, the clause relating to suits would be meaningless without reference to the latter. We cannot suppose, from the words of the statute, that the Legislature would have adopted the regulation about actions in the State courts, except for the purpose of enforcing the prior clause in the same section relating to the statement to be filed with the Secretary of State. The several parts of the section are not capable of separation if effect be given to the legislative intent. It is well settled that if a statute is in part unconstitutional, the whole statute must be deemed invalid, if the parts not held to be invalid are so connected with the general scope of the statute that they cannot be separately enforced, or, if so enforced, will not effectuate the manifest intent of the Legislature. In Allen v. Louisiana, 103 U. S. 80, 84, this court referred with approval to what Chief Justice SHAW said on this point in Warren v. Charlestown, 2 Gray, 84. Referring to the rule obtaining in cases of statutes in part constitutional and in part unconstitutional, that eminent jurist said: 'But, if they are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant a belief that the Legislature intended them as a whole, and that, if all could not be carried into effect, the Legislature would not pass the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent, conditional or connected, must fall with them.' See also Poindexter v. Green-

how, 114 U. S. 270; Spraigue v. Thompson, 118 U. S. 90; Huntington v. Worthen, 120 U. S. 97.

"It results that as the part of section 1283 which relates to the statement to be filed with the Secretary is unconstitutional, and as the clause in the same section, relating to suits in the State court, is so dependent upon and connected with that part as to be meaningless when standing alone, the section must be held inoperative in all its parts and as not being in the way of the enforcement in any State court of competent jurisdiction of the plaintiff's right to a judgment against the defendant for the amount conceded to be due from him to the Text-book Company under his contract. The judgment must be reversed and the case remanded for further proceedings not inconsistent with this opinion."

The foregoing opinion, delivered by the Supreme Court of the United States, so fully, clearly and completely settles the constitutional questions involved in that case that there remains nothing new or additional to be said upon that subject; and since the same constitutional questions are involved in the case at bar, the ruling of that court in the case is controlling and binding upon this court in this case.

We, therefore, hold:

(a). That sections 1024, 1025 and 1026, Revised Statutes 1899, are applicable to the appellant, and that it is doing business in this State within the meaning of those sections.

(b). That while appellant is doing business in this State, yet the evidence shows that its business is confined to interstate business alone. That being true, it is not subject to State regulation within the meaning of said sections of our statutes, but is governed by the Constitution of the United States, and the laws thereof.

We, therefore, hold said sections to be unconstitutional, null and void in so far as they apply to and af-

fect appellant and all foreign corporations engaged in interstate commerce.

(c). That where a foreign corporation has a valid cause against a citizen of this State it may sue said citizen thereon in the courts of this State, provided a citizen of this State might do the same, notwithstanding the provisions of said section 1026 to the contrary. [Chambers v. Railroad, 207 U. S. 142, 148; United Shoe Machinery Co. v. Ramlose, 210 Mo. 631.]

(d). That clause of said section 1025 which requires appellant and all other foreign corporations carrying on solely interstate commerce in this State to make out, deliver and file with the Secretary of State a 'statement' of the character therein mentioned is also unconstitutional, null and void.

(e). The judgment, therefore, is reversed and the cause remanded to the circuit court for further proceedings in conformity to the views herein expressed.

All concur; *Valliant, J.,* in result in separate opinion.

## SEPARATE CONCURRING OPINION.

VALLIANT, J.—The opinion of the Supreme Court of the United States in the case quoted by my learned Brother WOODSON so completely covers this case that I feel compelled to concur in the result he has reached. The opinion of the Supreme Court of the United States on a Federal question is not only entitled to the highest respect on account of its wisdom, but also absolute obedience on account of its authority. But if the opinion in the case referred to had not arrived, as it did, after the submission and before the decision of this cause I would have favored affirming this judgment. The view that I had taken

of the case was that the transaction out of which this suit arose was not "commerce" within the meaning of that term as used in section 8, article 1, of the Federal Constitution. If the transaction in suit had been a sale of the books or papers which plaintiff furnished defendant, and which were transported through the mails or otherwise from the plaintiff's home in Pennsylvania to defendant in Missouri, it would have been commerce; but plaintiff in its argument before this court expressly repudiated that idea; it was not a sale of the books and papers sent, for those remained the property of the plaintiff, but it was the instruction contained in those books and papers. The plaintiff was not willing to part with its title to the books and papers, because in that event the purchaser could dispose of them to another or to others who could obtain the instruction conveyed without paying the tuition fee to the plaintiff. The plaintiff, according to its argument before this court, was simply a teacher who loaned its books to its pupils and charged nothing for their use, but charged a tuition fee for the learning imparted.

The language of the Constitution is: "Congress shall have power . . . to regulate commerce with foreign nations, and among the several States, and with the Indian tribes." Webster gives to the word commerce four definitions, the first of which is: "The exchange or buying and selling of commodities; especially the exchange of merchandise on a large scale, between different places or communities; extended trade or traffic." That is the sense in which the word commerce is ordinarily used and I have no doubt it is the sense in which the framers of the Federal Constitution intended to use it. The three other definitions given by Webster, although technically correct, have no reference to trade.

Congress has never undertaken to exercise the power given in this clause of the Constitution other-

wise than to enact laws affecting trade and traffic in the sense of buying and selling or exchange of commodities or the carrying of goods and people. It has never undertaken to enact a statute to regulate communication of thought between the States, and that is all there is in this case, as I understand it.