CHUSE ENGINE & MANUFACTURING COMPANY, Respondent, v. VROMANIA APARTMENT COMPANY, Appellant.

St. Louis Court of Appeals. Argued and Submitted December 5, 1910. Opinion Filed December 30, 1910.

1. CONTRACTS: Place of Performance. A proposal to sell articles, stipulating that it is not to be valid until accepted by the obligor at its home office in a foreign state, is, if accepted, a contract of the state where such home office is located, inasmuch as that is where the minds of the contracting parties meet.

2. CORPORATIONS: Foreign Corporation: Not Licensed to do Business: Interstate Commerce: Statute. A foreign corporation manufacturing machinery in a foreign state, constituted a resident of this state its sales agent in this and other states. The contracts procured by the agent for the sale of machinery were not effective until approved by the foreign corporation at its home office. The agent procured a contract for the sale of machinery to a resident of this state which the foreign corporation accepted. The contract called for delivery f. o. b. cars at the home office of the corporation, and obligated it to furnish men, if required, to start the machinery. The agent had no power to make collections and he was paid by the foreign corporation from its home office, the latter having no property in this state. This contract was duly performed by the foreign corporation, and it brought suit against the purchaser for the purchase price of the machinery, the latter defending on the ground plaintiff had failed to obtain a certificate to do business in this state, as required by sections 3037, 3039 and 3040, Revised Statutes 1909, and hence could not sue in the courts of this state. *Held*, that the transaction was one of interstate commerce, and that said statutes did not prevent the foreign corporation from maintaining an action on the contract in the courts of this state.

3. CONSTITUTIONAL QUESTIONS: Court of Appeals: Controlling Decision of Supreme Court. The Court of Appeals has no power to pass on constitutional questions, but must accept as final the decision of the Supreme Court adjudging the constitutionality or unconstitutionality of a statute, until it is overthrown by the Supreme Court itself.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Williams,* Judge.

AFFIRMED.

*Vital W. Garesche* and *A. G. Moseley* for appellant.

(1) A foreign corporation cannot lawfully do business in the State of Missouri without first obtaining from the secretary of state, a license as such, and without complying with the statutory requirements of the State of Missouri relating to foreign corporations desiring to do business here, and any contract

made by such corporation while doing business here without a license is void and nonenforceable. Ehrhardt v. Robertson Bros., 78 Mo. App. 404; Mill & Lbr. Co. v. Sims, 197 Mo. 507; Fruit Co. v. McKinney, 103 Mo. App. 304; Amusement Co. v. Forest Park Am's Co., 192 Mo. 404; Shoe Machinery Co. v. Ramlose, 210 Mo. 631; Roeder v. Robertson, 202 Mo. 522; Buggy Co. v. Priebe, 123 Mo. App. 521; Glass & Sand Co. v. S. R. Smythe Co., 128 S. W. 1136; R. S. 1899, sec. 1025. (2) The court erred in giving a peremptory instruction to the jury to find for respondent where there was evidence in the record tending to establish the defense of appellant. Williamson v. Transit Co., 202 Mo. 346; Powers v. Transit Co., 202 Mo. 268; Stewart v. Sparkman, 69 Mo. App. 456; Twohey v. Fruin, 96 Mo. 109; Cook v. Railroad, 63 Mo. 397. (3) The contract between respondent and appellant was a Missouri, and not an Illinois contract, because it was originally made by an agent of respondent with appellant in Missouri subject to the approval of respondent at Mattoon, Illinois, and was to be performed in Missouri, and was performed in Missouri, and the subsequent ratification thereof by respondent did not change the status of the contract. Golson v. Ebert, 52 Mo. 270. (4) The right to dictate in advance what the finding of the jury shall be does not follow from the right of the court to review such finding, and if there is any testimony in support of an answer, a peremptory instruction to find for the plaintiff should not be given unless the answer fails to state a defense. If there is any evidence tending to support an answer it should go to the jury. Therefore, instruction No. 2 offered by plaintiff should not have been given. Hadley v. Orchard, 77 Mo. App. 141; Schroeder v. Railroad, 108 Mo. 322; Wolff v. Campbell, 110 Mo. 114; Erhardt v. Robertson Bros., 78 Mo. App. 411. (5) The court erred in giving an instruction to the jury

to find for a fixed amount. The instruction should not have attempted to compute the amount, if any, due the plaintiff. That was the sole province of the jury. Cates v. Nickell, 42 Mo. 169; Burghart v. Brown, 60 Mo. 24; Howerton v. Insurance Co., 105 Mo. App. 584; Dawson v. Wombles, 111 Mo. App. 538; Kroge v. Modern Brotherhood of America, 126 Mo. App. 704.

*Stern & Haberman* for respondent.

(1) The contract in this case was made in Illinois, was for performance in Illinois, and the act in question was, therefore, interstate commerce and as such could not possibly be subject to the statutes of Missouri concerning foreign corporations. Holder v. Aultman Miller & Co., 169 U. S. 81, 42 L. Ed. 669. (2) Where an agent is employed by a foreign corporation in a state having such a restrictive statute, to solicit orders and make entimates of material to be furnished therefor, receiving payment by way of commission on orders sent by him to the corporation, or otherwise, such orders being subject to acceptance by the corporation and being filed by direct shipment from the home office to the customer, the corporation is not deemed to be doing business within the restrictive state, within the meaning of such a statutory prohibition. 19 Cyc. of Law and Pro. p. 1272; Meddis v. Kenney, 176 Mo. 200; McBath v. Jones, 149 Fed. R. 387; Atlas Engine Works v. Parkinson, 161 Fed. R. 223; Kirnen v. Chemical Co., 145 Fed. R. 288; Steam Heating Co. v. Gas Fixture Co., 60 Mo. App. 155; Buggy Co. v. Priebe, 123 Mo. App. 521; Abraham Bros. v. Railroad, 149 Ala. 547; Lumber Co. v. Ins Co., 73 N. Y. Supp. 668; Harvard Co. v. Wicht, 91 N. Y. Supp. 48; Publ. Co. v. Bagge, 91 N. Y. Supp. 173; Mfg. Co. v. Fizzell, 11 Idaho 1, 81 Pac. 58. (3) If the acts in the suit at bar he held doing business, then the applica-

tion of the Missouri statutes would interfere with interstate commerce and be unconstitutional as in conflict with the commerce clause of the Constitution of the United States. Crutcher v. Commonwealth of Ky., 141 U. S. 47; McCall v. People of California, 136 U. S. 104.

REYNOLDS, P. J.—By its petition in this case, plaintiff, averring that it is a corporation organized and existing under the laws of the State of Illinois and engaged in business at Mattoon, in that state, and that defendant is a corporation organized under the laws of the State of Missouri, sets out that defendant entered into a contract with it, under and by the terms of which plaintiff contracted and agreed to furnish and erect for defendant two high-speed automatic engines and two electric generators, all to be delivered and erected for the agreed and stipulated price of $3975; that under the terms of the contract and at the special instance and request of defendant, plaintiff, as original contractor with defendant, furnished, delivered and erected the engines and the electric generators in and upon a certain building situated upon lots in the city of St. Louis, averred to be the property of defendant. It is further averred that the reasonable market value of the machinery is $3975 and that it was furnished and erected under one general bid or proposition in writing made by plaintiff to defendant and accepted by defendant in writing; that defendant has paid on account of that sum $900 and no more, leaving a balance due of $3075 unpaid and long since due. The terms of payment under the contract are set out and the necessary facts to entitle plaintiff to a mechanic's or materialman's lien are averred. It is further set out in the petition that other parties named as defendant claim some interest in the property upon which the building is situate, but it is not necessary

to consider this part of the petition as no judgment went against these parties. Judgment is prayed for $3075, with interest from the 23d of December, 1907, and costs and also for a special judgment and execution against the property sought to be charged.

The answer upon which the case went to trial was a general denial and the affirmative defense that plaintiff at the time of making the contract sued on was a foreign corporation, organized and existing under and by virtue of the laws of the State of Illinois, resident and doing business in this state now and at the date of making the contract; that it was not licensed or authorized to do business in this state, as required by what are now sections 3037, 3039, 3040, Revised Statutes 1909, at the time of making the contract sued on, nor had it filed or had on file in the office of the Secretary of State a copy of its charter or certificate of incorporation, nor had it since that date, in accordance with the provisions of the statutes made a sworn statement of the proportion of its capital stock represented by property located and business transacted in this state, nor had it paid the incorporation fees required by the above sections, nor had it received from the Secretary of State a license as a foreign corporation to do business in this state; wherefore defendant avers that the alleged contract set out in plaintiff's petition was and is void and of no effect and is not enforcible.

The reply was a general denial.

The cause was first tried before the Hon. Robert M. Foster and resulted in a verdict for plaintiff, returned under a peremptory instruction by the court. That verdict was set aside for error in that instruction, in that it directed the jury to find a specified sum in favor of plaintiff. The case was then tried before the court and a jury, the Hon. George H. Williams presiding. Evidence was introduced on the part of plain-

tiff, tending to show that it had furnished the machinery specified in the petition. The ownership of defendant of the lots upon which the building stood and in which the machinery was erected, and the proper filing of the lien papers was in evidence and not controverted. It further appeared by the evidence that one Parker had a contract with plaintiff, to the effect that Parker was constituted the sales agent for the engines and generators manufactured by plaintiff, in the states of Missouri, Arkansas and parts of Kansas, Illinois, Oklahoma and the Indian Territory. Under this sales agency contract, plaintiff agreed, among other things, not to sell engines of its manufacture direct to purchasers in Parker's territory and to refer all inquiries for prospective purchasers in the territory to him and to assist him where possible, by furnishing information by correspondence, to effect sales. Plaintiff also agreed to exercise diligence to prevent the purchase of its engines by other parties in the United States for shipment into Parker's territory and agreed to refuse to sell to any other person or corporation, engines for shipment in his territory, " it being the policy of the firm," (meaning by "firm," the plaintiff) "to the best of its ability, to protect all its agents in their profits on sales in their territory." Plaintiff was also "to pay the agent the difference between the price of the engines to the agent, f. o. b. cars Mattoon, Illinois, and the price at which they are sold. Payment of said difference shall be made pro rata as the firm receives settlement from the purchaser." Parker agreed on his part to devote so much of his time and energies to the sale of the engines, manufactured by plaintiff, "as is necessary to properly and energetically introduce and sell the said engines," and agreed that he would "not accept the agency or use his influence to sell any other make of horizontal, high-

154 App.—10.

speed, automatic engines.'' It was further understood that the net price to the agent in special cases might be arranged at the time of the sale to suit the circumstances by mutual agreement between the parties, the net price as established being subject to change or correction from time to time by plaintiff. It was further agreed that Parker was to use plaintiff's regular blanks ''when submitting proposals for engines; and no proposal shall become binding upon the firm until formally approved and accepted by the firm, at its general office at Mattoon, Illinois.'' It is further provided that Parker was not authorized by the contract to make collections or receive money in payment on contracts, but that after acceptance of the order by plaintiff, plaintiff assumes all risk of collection, and that on all contracts when accepted by plaintiff, the latter would guarantee agent's commission except when the contract is not fulfilled on account of purchaser not being financially responsible or when purchaser refuses to accept delivery due to causes beyond the control of plaintiff. The contract was to be in force not less than five years, ending February 1, 1912, unless sooner terminated by either party giving sixty days written notice to the other. It appeared that Mr. Parker subsequently organized a corporation called Parker-Kohn Engineering Company and which latter corporation took over the sales agency contract which Parker had before then held with plaintiff. Acting under this sales agency contract, the Parker-Kohn Engineering Company presented to defendant a proposal for the machinery mentioned in the petition. This proposal was on a blank, headed, ''Proposal for 'Chuse' Engine. Chuse Engine & Manufacturing Company, Manufacturers, Mattoon, Illinois. Presented by P-K Engineering Company, 1117-1118 Chemical Building, St. Louis. To Vrooman Apartments Co., City.'' Plaintiff, in this paper, proposed to furnish the ma-

chinery referred to, describing it in particular; the Chuse Engine & Manufacturing Company to deliver the machinery f. o. b. cars in Mattoon, Illinois. The time of delivery was specified and as extras to the engine proper two electric generators were to be delivered and erected and if required plaintiff was to furnish a man to start the engine at so much a day, defendant to pay board and expenses, and if purchaser (defendant) did its own erection, it was to assume responsibility for any faulty erection. It was further agreed that when the engine was taken from the cars, the purchaser was to be responsible for its care and safe keeping and provide ample shelter and covering for the same to prevent its exposure to the weather and to action of dust and dirt and also insure the same for the benefit of plaintiff for at least such portion as plaintiff's interest therein amounted to. A guarantee as to the machinery doing the work represented follows. It is also agreed that title to the machinery is vested in the plaintiff until paid for in full in cash, and if any payment is defaulted, plaintiff is given full authority to enter the premises where the machinery may be and remove the same as its personal property, it being provided that the acceptance of other security is not in any manner to waive this privilege, the purchaser agreeing to evidence this clause by any legal instruments necessary under the laws of this state. The price and terms of payment are as set out in the petition. The final clause in the proposal is to the effect that it is void unless accepted and returned on or before a day named "and is not binding on the Chuse Engine & Manufacturing Company until approved by them at the home office in Mattoon, Illinois." This proposal bears date at St. Louis and is signed by the Chuse Engine & Manufacturing Company, "by P. K. Engineering Co., by E. C. Parks," "P. K. Engineering Company" standing for the Parker-Kohn Engi-

neering Company. Below this is written, "Accepted this 2d day of August, 1907. Vrooman Apartment Co., H. A. Vrooman, Pres.," and below this is written, "Approved at Mattoon, Illinois, this 3d day of August, 1907," and this latter is signed by the secretary of the plaintiff company in the name of plaintiff. It is also approved by the Knox Engineering Company, which appears to have had some supervision over the selection of the machinery to go into the building. It further appeared that the machinery was shipped at Mattoon, Illinois, f. o. b. in accordance with this accepted proposal and put in place under the direction of the Parker-Kohn Engineering Company, and that nine hundred dollars had been paid under the contract. The balance, as stated in the petition, had not been paid. It further appeared that the Parker-Kohn Engineering Company, a Missouri corporation, had their offices in the city of St. Louis and that at the time of the submission of this proposal it was also acting as sales agent for several other concerns also engaged in the manufacture and sale of different kinds of machinery other than that manufactured by plaintiff, apparently carrying on a sort of brokerage in sales of various lines of machinery. It also appeared that plaintiff had no office or place of business in the city of St. Louis; had no property in the State of Missouri. As to the vendor's lien referred to in the contract there does not appear to have been any papers executed as called for in the contract, in accordance with the laws of this state (R. S. 1909, sec. 2889), so that that feature of the case calls for no consideration. The only evidence offered and introduced by defendant was a stipulation offered at the close of plaintiff's case, to the effect that it was agreed that plaintiff has at no time before the trial made application for a certificate or had secured a license to do business in this state.

The court at the instance of plaintiff instructed the jury, in substance, first, that if they found and believed from the evidence that plaintiff and defendant entered into the contract referred to in the petition, setting out the substance of that contract, for the stipulated price of $3975, of which $900 is admitted to have been heretofore paid to plaintiff, and if the jury further found that plaintiff thereafter furnished the machinery according to the terms and specifications agreed upon and that it was placed upon the property described and that plaintiff had within due time filed necessary papers to entitle it to a lien, then the jury should find for plaintiff and against the defendant Vromania Apartment Company for the balance due under the contract, not exceeding the sum of $3075 with interest thereon at the rate of six per cent per annum from the 27th of February, 1908, with a special judgment and mechanic's lien against the property of the defendant as owner thereof.

The second instruction was to the effect that there is no evidence before the jury in violation by plaintiff of the laws of Missouri relating to foreign corporations and that upon that issue as presented by the defendant's answer their verdict must be in favor of plaintiff.

Defendant duly objected and excepted to the giving of these instructions and on its part asked several instructions. One of them asked, was to the effect that under the law and the evidence, plaintiff could not recover. Another was to the effect that if the jury found that plaintiff had not complied with the law of this state in obtaining the certificate or license from the Secretary of this State authorizing it to do business in this state and is not now licensed as a foreign corporation to do business in Missouri, then their verdict should be for the defendant, unless the jury further believe and find from the evidence "that the

Parker-Kohn Engineering Company, acted only as a drummer or traveling salesman in securing and making contracts in Missouri on behalf of the plaintiff and in securing and making the contract with the evidence.'' Another instruction asked was to the effect that if the jury found that plaintiff had no license to do business in this state, being a foreign corporation, and that at the date of the making of the contract plaintiff was doing business in this state through the Parker-Kohn Engineering Company, then a resident of this state, and while acting in behalf of plaintiff the latter obtained the contract in evidence ''by and with the contract and authority of the plaintiff herein,'' and if they further believed and found from the evidence that for a long time prior to the making of the contract between the plaintiff and defendant in evidence, plaintiff was doing business in this state through a resident agent, namely, the Parker-Kohn Engineering Company, which was then and there acting as the sole and exclusive sales agent of the plaintiff in this state, then their verdict should be for defendant, unless ''said plaintiff sold goods in the State of Missouri only through its traveling salesmen or drummers acting for and in its behalf in this state.''

Another instruction asked was that the jury, in determining whether or not plaintiff was a resident of this state or did business through a resident agent in this state, and that the agent was not a drummer or traveling salesman, the jury would take into consideration all the facts and circumstances in evidence surrounding the making of contracts by the Parker-Kohn Engineering Company in the state of Missouri on behalf of plaintiff, ''together with the general course of business, and the method of its transaction, pursued by said Parker-Kohn Engineering Company, acting on behalf of plaintiff in the making of the contracts

for plaintiff and the making of the contract between plaintiff and defendant in evidence.''

These being refused, defendant duly saved exception.

Of its own motion the court instructed the jury as to the number necessary to concur in a verdict.

The jury returned a verdict in favor of plaintiff for the full amount sued for and interest. Judgment followed and a motion for new trial was duly filed, the giving of the instructions for plaintiff and the refusal of those asked by defendant being specifically set out, among other grounds. This motion was overruled, plaintiff excepting and afterwards duly perfecting appeal to this court.

The learned trial judge, at the conclusion of the testimony in the case, and before acting on the instructions, so clearly outlined the issues and the points involved, as well as the salient points of the evidence in the case, that we can do no better than incorporate here what he then said, as indicating the view he took of the questions presented by the case. It is as follows:

The court, addressing himself to counsel for defendant, said: ''My understanding of your position is that while it might be true that the Chuse Engine & Manufacturing Company is an Illinois corporation; while it might be true that it manufactures all of its output there, and has no storehouse and no consignment of its goods to any representative in Missouri; while its contract with its agent here must be approved before it becomes effective in Missouri—must be approved in Illinois and therefore might be considered as an Illinois contract, although the contract has to be sent back to the agent who makes the contract for delivery to the other parties to said contract—yet that the Parker-Kohn Engineering Company, being a resident of Missouri, and even though they had a contract

for selling goods for this concern in territory other than Missouri territory, yet that this company is doing business in the State of Missouri through the agent under contract, through whom all of its goods must be sold; that the character of that business therefore is not interstate business, but is business done with the effect, if not the intent, of defeating the laws of this state covering foreign corporations coming into Missouri to do business, and that to that extent it is doing business in the State of Missouri, and therefore that its contracts for Missouri are illegal, and being illegal, this defendant would not have to pay the balance due on the machines, amounting to some three thousand and seventy-five dollars.

"The evidence is overwhelming to the effect that the Chuse Engine & Manufacturing Company manufactured this machinery and put it on its cars in Mattoon, sent it to St. Louis; that it was installed in the Vromania Apartments; that they are receiving the benefits of this sale, and there is no defense whatever, except that they won't pay because the contract is illegal. Now, that is a hard position to take. That is to say, it is a hard contract not to enforce. It would be a hardship, in other words, upon the Chuse Engine & Manufacturing Company if the contract were illegal. And inasmuch as the statute provides for a penalty, the contract must be strictly construed; that is to say, to say whether or not it is within the purview of the statute.

"If there is some reason to exclude this contract and this sale from the operation of the statute, in all good conscience it should be done. If on the other hand, the facts are such as to lead to no other conclusion but that this contract is illegal, then this court has nothing to do but to declare it illegal. . . .

"My first impression of this case was that inasmuch as this was an Illinois (contract), inasmuch as

and so far as the Chuse Engine & Manufacturing Company was concerned, that contract was not made their contract and did not become binding on both parties until it was approved in Illinois, while they might have had the right to recall—yet there was a meeting of the minds in Mattoon, Illinois, on the date they signed that agreement or contract; and I am constrained to believe that it was an Illinois contract. There were no goods here. . . .

"I think also that it is a question that, if it can be resolved by the court as a matter of law, ought not to be submitted to the jury, the question of fact as to whether or not they were doing business within or without the state.".

As we understand the decision of our Supreme Court in the recent case of International Textbook Co. v. Gillespie, — Mo. —, 129 S. W. 922, following International Textbook Co. v. Pigg, 217 U. S. 91, and the effect of its decision in United States Shoe Machinery Co. v. Ramlouse, not yet officially reported but in which the motion for rehearing was overruled by the Supreme Court December 23, 1910, — Mo. —, — S. W. —, our Supreme Court holding that plaintiff was transacting business within this state within the purview of sections 3037, 3039 and 3040, Revised Statutes 1909, nevertheless holds that as the business in which the defendants in those cases were engaged, pertained to interstate commerce, those sections are not applicable to it. The proposal in evidence in this case at bar, made by plaintiff to defendant, was submitted to plaintiff by the Parker-Kohn Engineering Company at St. Louis. But by its very terms this proposal stipulated that the contract proposed, if entered into, was not to be of any force, effect or validity until accepted by plaintiff at its home office in the State of Illinois. It was accepted by plaintiff at its home office in Illinois. The minds of the contracting parties must there-

fore be held to have met in Illinois. This made it an Illinois contract. Furthermore, by the terms of the contract the delivery of the machinery was to be and in fact was made to plaintiff f. o. b. the cars at Mattoon, Illinois. Comparing the facts in the case at bar with those in the Gillespie and Pigg Cases, so far as covers the transaction of business in this state by the plaintiff, we see nothing to lead us to hold that the acts of this plaintiff make it any more subject to our laws than did the acts of the plaintiff in those cases. It appears to us that the relations of plaintiff to the sales agency of the Parker-Kohn Engineering Company are nothing like as direct as were those of the agents in those two cases. In those cases the plaintiff's maintained their own offices in Missouri and Kansas, the home offices being in the State of Pennsylvania. Its offices in Missouri and Kansas were advertised and marked out to the public by signs, displaying the name of the International Textbook Company; the agents were not drummers or traveling salesmen, but resident and located in this state, in the Gillespie Case, and in Kansas, in the Pigg Case. It solicited business in those states. Distinctly it did business in Missouri and in Kansas, but both courts hold it pertaining to interstate commerce. In the case at bar plaintiff neither held out by signs or other visible evidences that it had any office or agency in the city of St. Louis or in this state. The agents made no collections. They were paid their commissions from the home office in Illinois. In point of fact and as shown by the evidence, plaintiff paid no rental for any offices in this state. Clearly and beyond controversy, it had no property of any kind within this state, so it had none to be protected by our state, a reason stated by our Supreme Court and by this court in many cases underlying our law requiring foreign corporations to pay the license taxes or fees exacted; that enjoying the protection of the laws of this state

for the property here situate, the foreign corparation should bear the burdens incident to the protection of that property. It, applying for a license here, could not set out the amount of property which it has in this state and the proportion that that property bears in value to the capital stock of the corporation, for it had none. We would be justified on the facts in holding that plaintiff was not doing business in this state at all. It is not necessary to do this, however. The Supreme Court of the United States and that of our state have held in the cases above referred to, that the business done in the state by the plaintiffs in those cases pertained to interstate commerce. We hold that is true of the business done by plaintiff in this case. Our Supreme Court has further held sections 3037, 3039 and 3040, Revised Statutes 1909, the sections relied on by defendant, to be null and void as applied to corporations engaged in interstate commerce. We have no power to pass on and determine a question in which is involved the construction of the Constitution of the United States or of this state. But when our Supreme Court has pronounced a law either constitutional or unconstitutional, all we are authorized to do, what we are bound to do, is to accept that decision as final until overturned by the Supreme Court itself. [Brown v. M. K. & T. Ry. Co., 104 Mo. App. 691, 78 S. W. 273.]

The motion for a rehearing, filed herein, is overruled; our former opinion is withdrawn, this being substituted and judgment of the circuit court in this case is affirmed as of date December 30, 1910. *Nortoni* and *Caulfield, JJ.,* concur.