KIRKEBY AND GUNDESTRUP SEED CO., Respondent, v. O. T. WHITE and JOHN M. ALLEN, Appellants.

Springfield Court of Appeals, February 3, 1913.

1. **CONTRACTS: Time as of the Essence of.** Plaintiff, a foreign corporation, contracted with the defendants for a carload of onion sets at a stated price: "F. O. B. Jefferson Park, Ill. . . . for shipment *about not later* than Feb. 10, 1911. . . . If taken by December 20, five cents less per bushel. . . . If after February 10, five cents more per bushel." On January 19, 1911, defendants wrote plaintiff that they canceled the contract. Defendants refused to agree to cancellation. Several letters were exchanged, silent as to time of shipment. On February 10, 1911, plaintiffs loaded sets on car at Jefferson Park, Illinois, February 17, the car reached its destination. Defendant refused to accept it. Plaintiff sold sets to another party and sued for the difference between the contract price and the amount received from the sale to the third party. *Held*, that time was not of the essence of the contract as to the defendants.

2. ——: **Construction of: Intent of Parties.** In determining whether stipulations as to the time of performance of a contract of sale are conditions precedent, the court seeks to discover the intention of the parties, and if time appears from the language used and the circumstances, to be of the essence of the contract, stipulations in regard to it will be *held* to be conditions precedent.

3. ——: **Terms Construed by Parties to.** Where parties to a contract have given its terms a particular construction, such construction will generally be adopted by the court in giving effect to its provisions.

4. ⸺: **Breach of.** When a purchaser breaches a contract and refuses to accept the chattels sued for, the seller may treat the sale as ended by the purchaser's default, and need not make any delivery or tender of the articles sold.

5. **BREACH OF: Remedies.** The seller has two remedies: (a) He may dispose of the property for the purchaser's account, protecting, as far as possible, the purchaser's interests and obtaining the best price. (b) The seller may keep or dispose of the goods as his own; and his damages would be the difference between the contract price and the market value.

6. **CORPORATIONS: Foreign Corporations: Interstate Commerce.** Plaintiff, a foreign corporation, was engaged in interstate commerce and was therefore not amenable to Rev. Stat. 1909, sec. 3039.

Appeal from Jasper Circuit Court, Division Number Two.—*Hon. D. E. Blair*, Judge.

AFFIRMED.

*Edgar B. Chestnut* for appellants.

(1) The plaintiff was a foreign corporation engaged in doing business in this State in violation of the provisions of sections 3038 and 3039, R. S. 1909. Parke Davis & Co. v. Mullett, 149 S. W. 462; Fay Fruit Co. v. McKinney Bros. & Co., 103 Mo. App. 304. (2) Time is of the essence of the contract, and plaintiff failed to show compliance with the stipulations as to the time of shipment. 1 Beach Mod. Law of Contracts, sec. 783; Orange Growers' Assn. v. Gorman, 161 Mo. 211; 35 Cyc. 175-178; Ledon v. Havemeyer, 24 N. E. 299.

*Pearson & Butts* for respondent.

(1) Defendants have not established that this transaction was doing business in this State, within the meaning of sections 3038 and 3039. 7 Cyc. 416; 9 Cyc. 670, note 17; Text Book Co. v. Gillispie, 229 Mo. 397; Koenig v. Boat Mfg. Co., 155 Mo. App. 685; Hogan v. St. Louis, 176 Mo. 156; 9 Cyc. 668, note 11, 669;

Shoe Mchy. Co. v. Ramlose, 210 Mo. 655. (2) The limitation as to time of shipping was a limitation upon the defendants, and not the plaintiff, if time were of the essence, which it was not. Metal Fireproof Co. v. Cement Co., 123 Mo. App. 715; Steam Heating Co. v. Bissell, 41 Mo. App. 426; Tuft v. Morris, 87 Mo. App. 98. (3) Plaintiff was within his rights in re-selling. Laswell v. Handle Co., 147 Mo. App. 497; Carriage Co. v. Gilmore, 123 Mo. App. 19; Oehler v. Fruit Co., 162 Mo. App. 446; Koenig v. Boat Mfg. Co., 155 Mo. App. 685; Range Co. v. Mercantile Co., 120 Mo. App. 447. 4. The defendants positively repudiated the contract and declared their default within the delivery season. Oehler v. Fruit Co., 162 Mo. App. 446; Laswell v. Handle Co., 147 Mo. App. 522. 5. And plaintiff had the right to keep or dispose of the goods as its own, and its damages would be the difference between the contract price and the market value. Laswell v. Handle Co., 147 Mo. App. 497; Koenig v. Boat Mfg. Co., 155 Mo. App. 685; Range Co. v. Mercantile Co., 120 Mo. App. 447. 6. "A sale, the parties to which are of different States, is a transaction of interstate commerce, wherever the contract may be made." 7 Cyc. 416; 9 Cyc. 670; note 17; Text Book Co. v. Gillespie, 229 Mo. 397, holding the statute does not apply to interstate commerce. Koenig v. Boat Mfg. Co., 155 Mo. App. 685.

ROBERTSON, P. J.—Plaintiff sued the defendants in the circuit court to recover the difference between the contract price for a carload of onion sets, ordered from it by defendants to be shipped from Chicago, and the price the plaintiff was able to sell same for after defendants had refused to accept them, said difference amounting to $528.40. A jury was waived and the trial was had to the court. At the close of all the testimony, the defendants requested a declaration of law that under the pleadings and the evidence the

plaintiff was not entitled to recover, which was refused and judgment entered for the sum sued for, and the case is here on the question of the refusal of this instruction.

It was admitted at the trial that the plaintiff was a foreign corporation at the time the contract in controversy was entered into and that it had not, prior to the signing of the contract, complied with the statute (section 3039 of the Revised Statutes of Missouri of 1909) in regard to taking out a license to do business in this State, and that the plaintiff was not authorized, under the laws of this State, at that time nor thereafter, under the provisions of said section to do business in this State.

The contract involved is as follows:

"White & Allen,
          Joplin, Mo.

No contract or special agreement recognized by this House unless noted on this order.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   . . .

All orders taken subject to the approval of the House. This order is not subject to countermand.

        Order No. 629.              Date Billed . . . . . . . . 19. . .
        Bought of Kirkeby & Gundestrup Seed Co.,
                  4273 Milwaukee Avenue,
               Branch, 10818 Michigan Avenue.
Warehouse, Norwood Park Ave. & C. & N. W. Ry.
                        Tracks.
                    Chicago, Ill.

For shipment about not later than Feb. 10, 1911 (weather permitting):

70 bu. Red Bottom Onion sets, at, per bu. $1.25
696 bu. Red Bottom Onion sets, at, per bu.  1.25
34 bu. White Bottom Onion sets, at, per bu.  1.50

A bushel of sets to consist of 32 lbs. at time of shipment. f. o. b. Jefferson Park, Ill.

All to be choice clean sets, screened through one-inch mesh and full delivery.

Bags, 5 cents. If taken by Dec. 20, 5 cents less per bushel. If after Feb. 10, 5 cents more per bushel than the above prices.

Aug. 11, 1910.

White & Allen,

Per O. T. White,

Bags at Value.

Terms—Cash Bill of Lading.

No discount.

Kirkeby & Gundestrup Seed Co.

W. K.

Ship via .....................................

This contract is subject to terms and conditions on back hereof, which are hereby agreed to. (over)

It is agreed Kirkeby & Gundestrup Seed Co. shall not be held liable for damages for the nonfulfillment of this contract in case the mentioned sets are destroyed by fire or other unavoidable cause.

It is further agreed that the said herein Kirkeby & Gundestrup Seed Co. will care for this stock, keep it in the same warehouses and give it the best attention and care, the same that they give any unsold portion of their crop.

If a portion of the above sets are destroyed, Kirkeby & Gundestrup Seed Co. will ship the balance of the contract.

Delivery to be made as near the date specified as weather will permit. Stock to be in good merchantable condition when shipped.

After carrying these sets in store till about shipping time Kirkeby & Gundestrup Seed Co. will not entertain a proposition to cancel the order.

These sets are not sold delivered, the buyer pays the freight.

Purchasers to pay for containers at value."

The testimony discloses that at the instigation of the Springfield Seed Company, presumably a concern of this State, the plaintiff mailed this contract to the defendants, which they received and signed at Joplin on August 11, 1910, returning it to the plaintiff at Chicago. This contract was a printed form and the words "not later than Feb. 10, 1911" were written in a blank space thereon.

On January 19, 1911, the defendants wrote the plaintiff a letter in which they stated that they cancelled the above order. To this letter plaintiff replied that they could not cancel the order for the reason that they covered all contracts in the summer and had the sets in their warehouse at Chicago ready to go out as specified; that they handled the sets on a small margin and could not take chances on the winter market; that they didn't make anything extra by a decline in prices afterwards, and stated that the car of sets would go forward about February 10; and also stated that they had no travelling men and no facilities for selling the sets at that time, as they did all of their selling in the spring and summer. Defendants answered this letter of plaintiff's stating that if plaintiff shipped the car of sets to Joplin plaintiff would have to dispose of it, and again positively stated that they concelled the order. Plaintiff replied to this letter on January 26, 1911, stating that the car would go forward as specified in the contract and if the defendants refused to accept the sets that plaintiff would sue defendants for the full amount of the bill, giving them credit for whatever might be realized by reselling the car.

On February 10, 1911, plaintiff loaded the sets on board the cars according to the contract, putting in sixty bushels of sets extra without charge to help the defendants out on the market. For some reason not explained by the testimony the car was not inspected nor bill of lading issued on the 10th, but on the

following day this was done and the car went forward. Plaintiff on that day wrote a letter to defendants reciting what had been done and enclosing the bill of lading and inspection certificate. When the car reached Joplin on February 17, 1911, defendants refused to accept it and the sets were sold to another party for $500.10 which one of the defendants in his own testimony admitted was a fair price. And the next day after the sets were sold to the third party, defendants purchased about one-half of the sets from that party.

Defendants insist that under the contract and the facts and circumstances above narrated, and which are not in dispute, that time was of the essence of the contract.

"In determining whether stipulations as to the time of performance of a contract of sale are conditions precedent, the court seeks to discover the intention of the parties, and if time appears from the language used and the circumstances, to be of the essence of the contract, stipulations in regard to it will be held conditions precedent." [Redlands Orange Growers Assn. v. Gorman, 161 Mo. 203, 211, 61 S. W. 820.]

Viewing the contract in controversy here in the light of this rule and the circumstances of the case, it will be seen that if time was the essence of this contract it was so only in behalf of the plaintiff. It is provided in the contract itself, typewritten into the printed from, that if the sets were shipped after February 10, the price should be five cents more per bushel. It is evident from this provision that at the time the contract was entered into that it would be material only to the plaintiff that the shipment should be made not later than February 10 at the price therein named.

It is also apparent from the testimony and the contract that it was contemplated at the time the con-

tract was entered into that the plaintiff would assemble this stock of sets in cold storage and hold them at Chicago for shipment at a time convenient for the defendants.

It is evident from the testimony in this case that the defendants, when they first began to write to the plaintiff about cancelling the order, were anticipating a decline in the market; and since the defendants were in a position to enforce their contract against the plaintiff if the situation had been reversed, and because of the fact that the plaintiff was compelled, by virtue of this contract, to store and keep in storage for the defendants these goods, we do not feel that justice would be subserved by holding, under the language of this contract and the facts disclosed at the trial, that time was of the essence of this contract as to defendants and in allowing the defendants to escape payment of the judgment of the trial court.

The defendants in their answer questioned the right of the plaintiff to maintain this suit and to enforce the contract sued on for the reason that it had not obtained authority to do business in this State, and because they allege this transaction constituted doing business in this State within the meaning of our statutes. Clearly plaintiff was engaged in interstate commerce and is not amenable to section 3039, Revised Statutes 1909. [International Text Book Co. v. Gillespie, 229 Mo. 397, 129 S. W. 922.]

The judgment is affirmed. *Farrington, J.*, concurs in separate opinion. *Sturgis, J.*, concurs in result in separate opinion.

## CONCURRING OPINION.

STURGIS, J.—Having some doubt as to construing the contract mentioned to be one of which time is not of the essence, noting that it is a mercantile contract and the rather strong language used, I pre-

fer to base my concurrence in affirming the judgment on the following grounds:

It is unquestioned that, prior to the time for shipping the onion sets in question, the defendants positively and unequivocally cancelled and repudiated the contract by notifying the plaintiff that they would not receive, pay for or have anything to do with the onion sets if shipped, and forbidding plaintiff to ship same.

The law is that, when a buyer breaches the contract and refuses to accept the chattels contracted for, the seller may treat the sale as ended by the purchaser's default; and in such case need not make any actual delivery or tender of the articles sold, and need not incur any labor or expense otherwise necessary in making delivery or tender. [Oehler v. Fruit Co., 162 Mo. App. 446, 142 S. W. 811, and the many cases there cited; Laswell v. Handle Co., 147 Mo. App. 497, 522, 126 S. W. 969; Black River Lumber Co. v. Warner, 93 Mo. 374, 6 S. W. 210.]

In such case the seller has a choice of remedies, one of which was adopted in this case, to-wit, sell the property for the buyer's account, taking such steps as are necessary to protect the buyer's interest and obtain the best price. [Rickey v. Tenbroeck, 63 Mo. 563; Koenig v. Boat Manufacturing Co., 155 Mo. App. 685, 135 S. W. 514; Oehler v. Fruit Co., supra.]

The plaintiff therefore was not, after the defendants' positive refusal to accept same, under any obligation to ship the goods at all, much less on the exact day mentioned in the repudiated contract. That it did so, even if one day late, and thus gave defendants another opportunity to accept and pay for the goods, certainly put plaintiff in no worse position than if it had sold on the market without giving such opportunity.

The only obligation the plaintiff owed the defendants after their refusal to accept was to sell for the best price obtainable and charge defendants no more than the difference between the contract price

and the best market price ascertained in this way. The uncontradicted evidence shows that this was done. In selling for defendants' account the plaintiff was not confined to any particular market and could certainly seek the best. The evidence showed and the court must have found that the onion sets sold better at Joplin than they would at Chicago or near there. That they bought a fair price in Joplin is conceded. It was to defendants' advantage that they were shipped and sold there. Having repudiated their contract, the defendants could claim no right except to have the fair market value of the onion sets credited on the contract price. This they have received to the full.

FARRINGTON, J. (concurring).—I desire to concur in the opinion of ROBERTSON, P. J., holding that time was not of the essence of this contract for the reasons set out in his opinion, and for the further reason that the parties put a construction on this contract which in my judgment should be controlling in this case. The rule is well-established that where parties to a contract have given its terms a particular construction, such construction will generally be adopted by the court in giving effect to its provisions. [The St. Joseph Union Depot Co. v. C., R. I. & P. Ry. Co., 131 Mo. 1. c. 305, 31 S. W. 908; Austin v. Shipman, 160 Mo. App. 1. c. 213, 141 S. W. 425, and cases cited.] In this case, the defendants by their several letters written long prior to the tenth day of February indicate beyond question that the time mentioned was not a condition precedent and did not amount to a warranty that the goods would be shipped on that date.

And, to my mind, the reasons given in the concurring opinion of STURGIS, J., are equally conclusive as showing why this judgment should be affirmed.