THE J. R. WATKINS MEDICAL COMPANY, Appellant, v. S. O. HOLLOWAY, JAS. M. MATHIS, and W. J. PENNINGTON, Respondents.

Springfield Court of Appeals, June 16, 1914.

CORPORATIONS: Foreign: Failure to Procure License: "Doing Business in the State:" Interstate Commerce.     Suit on a contract between plaintiff, a foreign corporation, and defendants, residents of Missouri, for sale of certain medicines and extracts.   Contract and evidence examined and reviewed. *Held*, to be interstate commerce and not subject to the Missouri Anti-Trust Law, and that plaintiff's right to sue was not defeated because it had not taken out a license to do business in Missouri as provided by section 3040, R. S. 1909.

Appeal from Butler Circuit Court.—*Hon. John P. Foard,* Judge.

REVERSED AND REMANDED.

*Tawney, Smith & Tawney* and *Sheppard & Green* for appellant.

(1) The trial court erred in peremptorily instructing the jury to find the issues herein for the defendants.   The contract between the appellant Watkins Medical Company and the defendant Holloway is not violative of sections 10298, 10299, 10300 and 10301, Revised Statutes 1909, known as the anti-trust statutes; nor is said contract void under the provisions of section 10307, Revised Statutes 1909.   Stareske v. Pub-

lishing Co., 235 Mo. 67; Pope Turnbo v. Bedford, 147 Mo. App. 692; Wood Mowing & Reaping Machine Co. v. Greenwood Hdwe. Co., 75 S. C. 378, 55 S. E. 973, 9 L. R. A. (N. S.) 501; D. M. Osborn & Co. v. Josselyn, 92 Minn. 266, 99 N. W. 890; In re Columbus Buggy Co., 143 Fed. 879, 74 C C. A. 611; Vaskerville v. Bates et al. (Minn.), 143 N. W. 909; Walker v. Butterick, 105 Mass. 237; Metropolitan Nat'l Bank v. Benedict Co., 74 Fed. 182; Vehlie Motor Co. v. Kopmeier Motor Co., 194 Fed. 324, 114 C. C. A. 284. (2) This contract relates to interstate commerce between the plaintiff, a Minnesota corporation, and the defendant Holloway, a resident of Missouri, and the sale and delivery of the goods took place in the State of Minnesota where the same were delivered to Holloway f. o. b. Consequently the anti-trust statutes of this State are not applicable to this case. Security State Bank v. Simmons, 251 Mo. 2; International Text Book Co. v. Gillespie, 229 Mo. 397; McCall Company v. Hughes, 42 L. R. A. (N. S.) 63; Butler Bros. Shoe Co. v. Rubber Co., 156 Fed. 2; Chicago Crayon Co. v. Rodgers, 119 Pac. 630; Freeman Sikes Co. v. Corticelli Silk Co., 124 Pac. 972; Western Union Co. v. Kansas, 216 U. S. 1; Bateman v. Milling Co., 1 C. C. A. 90; McCall v. Stiff, 142 S. W. 659; Dr. Koch Vegetable Tea Co. v. Malone et al., 163 S. W. 662.

*L. M. Henson* and *David W. Hill* for respondents.

(1) The contract in suit, as a whole, violates each and every one of the anti-trust statutes, sections 10298, 10299, 10300, 10301, and defendants are not liable. Sec. 10307, R. S. 1909; National Lead Co. v. Paint Store Co., 80 Mo. App. 247; Dwyer, etc. v. Flanagan, 87 Mo. App. 340; Heim, etc. Co. v. Belinder, 97 Mo. App. 64; Continental Wall Paper Co. v. Voight, 212 U. S. 227. (2) At no time were the goods sold under the contract in suit impressed with any feature of interstate com-

merce, because the plaintiff did business at Winona, Minnesota, and at Winona, in the same State, delivered to the railroad company as the agent of Holloway all the merchandise sued for, and thereupon they were shipped by Holloway, through his agent, the railroad company, to Holloway himself in Missouri, and for this reason, plaintiff cannot recover. Furthermore, the following provision of the contract shows that the business was intrastate and not interstate commerce: "The party of the second part agrees to return by prepaid freight to said company at Winona, Minnesota, in as good condition as when furnished him, all the said medicines, extracts and other articles undisposed of by him in his said territory." Orr's Adm'r et al. v. Orr et al., 163 S. W. 757 l. c. 758.

STATEMENT.—The plaintiff, a corporation organized under the laws of Minnesota and maintaining its principal place of business in Winona, Minn., brought suit against the defendants to recover the price of certain medicine and articles of merchandise furnished by the plaintiff to the defendant Holloway under the terms of a written contract. Defendants Mathis and Pennington entered into a written contract with plaintiff guaranteeing the payment for articles furnished to defendant Holloway under his contract; hence the suit against them.

The petition alleges the execution of the contract hereinafter set out, and states that at the time of making the same the defendant Holloway was owing plaintiff the sum of $332.95 for medicine and merchandise theretofore sold and delivered to him in Winona, Minn., payment for which was extended to March 1, 1911, and that payment was due, unpaid and owing after demand; that after making the contract, plaintiff sold to defendant on his written orders, f. o. b. Winona, Minn., and Memphis, Tenn., such orders dated at different times amounting in the aggregate to $320.90, the

same being shown by statements attached to the petition and marked as exhibits; and that on these items there had been paid by defendant at various times amounts aggregating $122.05, leaving a balance due for the goods which had been delivered prior to the execution of the contract and for those subsequent thereto, less the credits, of $531.80, for which plaintiff asked judgment together with interest and costs.

We quote from the defendants' brief as showing the contention made: "The answer of the defendants, in substance, alleges that the contract in suit violated the provisions of section 10298, 10299, 10300 and 10301, Revised Statutes of Missouri, 1909; and that by virtue of section 10307, R. S. 1909, the defendants are not liable in this suit. The answer also alleges that the plaintiff was doing business in Missouri without a license, contrary to section 3039, and by reason of the provisions of section 3040, R. S. 1909, plaintiff could not maintain this suit. The answer also alleges want of sufficient consideration and mutuality to support the contract; a modification of the contract and a compliance therewith."

As to want of consideration and modification of the contract, no point is made in defendants' (respondents') brief and no evidence was offered to show a modification.

The plaintiff in its reply put in issue the defenses set up.

The court at the close of plaintiff's evidence directed a verdict for the defendants.

The contract sued on is as follows:

"This Agreement, made at Winona, Minnesota, U. S. A., this 1st day of December, A. D., 1909, between The J. R. Watkins Medical Company, a corporation hereinafter called the Company, party of the first part, and S. O. Holloway of Poplar Bluff, Mo., R. R. 3, party of the second part: "Witnesseth, That for and in consideration of the promises and agreements

hereinafter contained, to be kept and performed by the party of the second part, the Company promises and agrees to sell and deliver to the party of the second part, free on board cars, at Winona, Minnesota, or at its option, at any of its regular places of shipment, any and all medicines, extracts and other articles manufactured or sold, or which may hereafter be manufactured or sold by it, at the usual and customary wholesale prices, as shown by the Company's wholesale printed price-list, as the party of the second part may reasonably require for sale by him at the regular retail prices from time to time, from the date hereof until the first day of March, 1911, when this agreement shall terminate; in the following described territory, excepting the incorporated municipalities therein located, to-wit: "In the State of Missouri, Howell County.

"In consideration of the sale and delivery to him free on board cars at Winona, Minnesota, or other shipping points as above mentioned, by said company, of the medicines, extracts and other articles manufactured or sold by it, in such reasonable quantities as he may require for sale in said territory at the regular retail prices as hereinbefore provided, the party of the second part promises and agrees, as soon as practicable after said medicines, extracts and other articles are received, to devote the whole of his time and attention to making a diligent, continuous and personal canvass of said territory, and to visit every farm house therein at least twice a year, at his own cost and expense, and provide a good team and proper wagon and outfit therefor, and sell at the regular retail price, aforesaid, said medicines, extracts and other articles or so much thereof at each of said houses to actual consumers in the above mentioned territory, as possible, and at all times during said term, said party of the second part agrees to keep a complete record of all goods disposed of by him in his said territory, and

on hand, and to make to said company complete regular weekly written reports of the sales and collections, and also report the goods on hand and outstanding accounts when required by said company so to do.

"And the party of the second part promises and agrees to pay to said company, at Winona, Minnesota, the wholesale prices, aforesaid, for the medicines, extracts and other articles sold to him from time to time, as hereinbefore provided, at the time and in the manner and in accordance with the provisions of the weekly report blanks of said company, furnished to the party of the second part, or in cash, within ten days from date of invoice, with the understanding that said company will allow a discount of three per cent from said wholesale prices on cash payments, provided full payment for all goods previously furnished shall then have been made; but such payments, or any of them, may be extended by said company without notice to the sureties hereon or without prejudice to the rights or interest of said company; and if the party of the second part shall not pay cash for said medicines, extracts and other articles so sold and delivered to him, and becomes indebted to said company therefor, and such indebtedness is allowed to continue unpaid, said company may in its discretion, thereafter either limit the sales herein agreed to be made, or discontinue the same until such indebtedness is paid or reduced as said company may require, and at the termination of this agreement, the party of the second part agrees to return by prepaid freight to said company, at Winona, Minnesota, in as good condition as when furnished to him, all of the said medicines, extracts and other articles undisposed of by him in his said territory, and said company agrees to receive such medicines, extracts and other articles as above provided, at the original prices at which the same were sold to him, and credit the party of the second part therefor, less a reasonable

182 Mo. App.—10

sum for putting the same or any part thereof in a salable condition if the same are not in such condition when so returned, and if there is any sum then due from either of the parties to the other, the same shall be due and payable on demand of the party to whom such sum is due.

"And it is mutually agreed between the parties hereto, that the party of the second part shall sell no other goods or articles during the term of this agreement, except those purchased by him from said company, as aforesaid, that he shall pay all transportation charges on goods he so purchases and all expenses and obligations incurred in connection with the canvass of said territory and the sale of the goods therein, and shall have no power or authority to incur any debt, obligation or liability of any kind whatsoever, in the name of, or for, or on account of said company, and that said company shall in no way contribute to the expense of, nor share in the profits of such sales. The party of the second part hereby promises and agrees to pay said company, at Winona, Minnesota, during the term of this agreement, the amount now due it for medicines, extracts and other articles, sold and delivered to him under a former agreement, free on board cars at point of shipment. And if the party of the second part shall fail to perform any of the conditions herein contained, required of him to be performed, at the time and in the manner as herein provided, the said company may, at its option, upon such failure terminate this agreement, by giving said second party written notice thereof by mail, and any sum then owing from said second party to said company shall thereupon be and become immediately due and payable.

"In Witness Whereof, the party of the first part has caused these presents to be executed in its corporate name by its proper officer, and the said party of

the second part has hereunto set his hand the day and year first above written.

"The J. R. Watkins Medical Company,

"By Paul Watkins, Vice-President.

"S. O. Holloway.

"In consideration of one dollar in hand paid, the receipt of which is hereby acknowledged, and of the execution of the foregoing agreement by The J. R. Watkins Medical Company, and the sale and delivery by it to the party of the second part, of its medicines, extracts and other articles and the extension of time of payment of the amount due from him to said company, as therein provided, we, the undersigned, jointly and severally guarantee the full and complete payment of said sum and of said medicines, extracts and other articles, at the time and place, and in the manner in said agreement provided.

"Jas. M. Mathis, Poplar Bluff, Mo.

"W. J. Pennington, Harviell, Mo."

It is admitted that the plaintiff is a foreign corporation and that it never obtained a license to do business in Missouri as provided in section 3039, R. S. 1909.

The plaintiff offered evidence to the effect that defendant Holloway owed it on account for goods furnished the amount named in the petition.

## OPINION.

FARRINGTON, J.—To sustain the action of the trial court in directing a verdict for the defendants at the close of plaintiff's case, the defendants set up the following grounds, claiming that the transactions whereby the defendant Holloway acquired the goods were in violation of certain sections of the act concerning pools, trusts, conspiracies and discriminations found in chapter 98 of the Revised Statutes of Missouri of 1909: (1) That the agreement is in restraint of

trade and competition in the purchase and sale of merchandise and void under section 10298, R. S. 1909. (2) That it violates section 10300, R. S. 1909, in that it restricts sales to certain territory in Howell county, Missouri. (3) That it regulates and fixes wholesale and retail prices contrary to section 10299, R. S. 1909. (4) That it lessens competition in that there was a division of territory contrary to section 10301, R. S. 1909. That therefore, such being the case, the plaintiff is denied a recovery as provided in section 10307, R. S. 1909, and that should such agreement be construed as a contract of agency between the parties, then the plaintiff cannot maintain this suit as it has never taken out a license to do business in Missouri as a foreign corporation as provided in sections 3039 and 3040, R. S. 1909.

In determining whether the plaintiff is denied the right to maintain this suit, either under section 10307 or section 3040, we must first ascertain whether the course of dealing shown here between plaintiff and defendant was interstate business. If their dealing was "interstate commerce," neither the Missouri anti-trust statutes nor the statute requiring certain corporations to obtain a license apply.

It is held in the case of Cooper Mfg. Co. v. Ferguson, 113 U. S. 727, 28 L. Ed. 1137, as follows: "So it is clear that the statute cannot be construed to impose upon a foreign corporation limitations of its right to make contracts in the State for carrying on commerce between the States, for that would make the Act an invasion of the exclusive right of Congress to regulate commerce among the several States. [Paul v. Virginia, supra.] The prohibition against doing business cannot, therefore, be literally interpreted."

We find the following language in Robbins v. Taxing District of Shelby County, 120 U. S. 489, 30 L. Ed. 694, 696: "In a word, it may be said that in the matter of interstate commerce the United States are but

one country, and are and must be subject to one system of regulations, and not to a multitude of systems. The doctrine of the freedom of that commerce, except as regulated by Congress, is so firmly established that it is unnecessary to enlarge further upon the subject.''

In the case of Philadelphia & Southern Mail Steamship Co. v. Commonwealth of Pennsylvania, 122 U. S. 326, 30 L. Ed. 1200, it is held that ''where a subject of interstate commerce is national in character, or admits of only one uniform system of regulation, the power of Congress is exclusive; and that its failure to make express regulations indicates its will that the subject shall be free.'' [See, also, Crutcher v. Commonwealth of Kentucky, 141 U. S. 47, 55 L. Ed. 649; Lyng v. People of the State of Michigan, 135 U. S. 161, 34 L. Ed. 150; The Norfolk & Western R. Co. v. Commonwealth of Pennsylvania, 136 U. S. 114, 34, L. Ed. 394; Caldwell v. State of North Carolina, 187 U. S. 622, 47 L. Ed. 336; International Text-Book Co. v. Pigg, 217 U. S. 91, 54 L. Ed. 678, 27 L. R. A. (N. S.) 493; State ex rel. Pacific Mut. L. Ins. Co. v. Grimm, 239 Mo. l. c. 182, 143 S. W. 483; International Text-Book Co. v. Gillespie, 229 Mo. 397, 129 S. W. 922; Corn Products Mfg. Co. v. Western Candy & Bakers Supply Co., 156 Mo. App. l. c. 116, 135 S. W. 985; Koenig v. Boat Mfg. Co., 155 Mo. App. 685, 135 S. W. 514; Chuse Engine & Mfg. Co. v. Vromania Apartment Co., 154 Mo. App. 139, 133 S. W. 624; Security State Bank v. Simmons, 251 Mo. 2, 157 S. W. 585; Kirkeby & Gundestraup Seed Co. v. White, 168 Mo. App. 626, 153 S. W. 279.]

In the case of Albertype Co. v. Gust Feist Co., 114 Tex. 791, the Supreme Court of Texas held that where a contract is one relating to interstate commerce, and therefore, under the Constitution of the United States (Art. 1, Sec. 8) giving Congress the power to regulate interstate commerce, the contract was not subject to the Texas anti-trust statutes defin-

ing and prohibiting conspiracies in restraint of trade, for the reason that the purpose of such laws does not reach subjects beyond the power of the State to regulate. The same doctrine will be found announced in Eclipse Paint & Mfg. Co. v. New Process Roofing & Supply Co. (Tex. App.), 120 S. W. 532; Erwin v. Powder Co. (Tex. App.), 156 S. W. 1097; McCall Co. v. Stiff Dry Goods Co. (Tex. App.), 142 S. W. 659; Dr. Koch Vegetable Tea Co. v. Malone (Tex. App.), 163 S. W. 662.] The opinion in the case last cited discusses the question here under consideration on a contract which is almost identical with the one before us.

The contract in our case is made by a citizen of Minnesota with a citizen of Missouri. By the terms of the contract, the merchandise was sold to the defendant Holloway in the State of Minnesota and was to be and in fact was delivered f. o. b., Winona, Minn. The various mail orders for goods sent in by the defendant from Missouri to the plaintiff in Minnesota were to be accepted and the delivery made in Minnesota. Nothing remained to be done under this contract after the goods were placed on cars in Winona except to pay for them, and this was to be sent in to Winona, Minn. Payment was to be in money in case the goods were sold by the defendant Holloway, or by allowing his account credit for the value of any that were returned. The evidence tends to show that all the goods were in fact sold by the defendant and none ever returned to the plaintiff. No office of any kind was ever maintained in Missouri by the plaintiff, nor did it retain any lien on or attempt to reserve any title to the goods from the moment they went aboard cars in Winona; they became the property of the defendant as soon as delivered to the carrier. Defendant paid the freight, and so far as the evidence goes, exercised complete control and ownership over the merchandise as soon as delivered by the plaintiff.

In the case of Dr. Koch Vegetable Tea Co. v. Malone (Tex. App.), 163 S. W. 662, the facts were almost identical with those here, and it was held that such transactions constituted interstate business and therefore were not to be controlled by the local State laws. The facts of the case bring the transactions between the plaintiff and defendant clearly within the defined meaning of the term "interstate commerce."

The opinion in the case of Butler Bros. Shoe Co. v. United States Rubber Co., 156 Fed. 1, goes into this question extensively and discusses many of the decisions. Indeed, the law on this subject has been so well discussed in the following cases that we deem it of no advantage to burden this opinion by a journey over the same trail, but instead refer to them as supporting the view we take: Chicago Crayon Co. v. Rogers (Okla.), 119 Pac. 630; Freeman-Sipes Co. v. Corticelli Silk Co. (Okla.), 124 Pac. 972; Western Union Tel. Co. v. State of Kansas, 216 U. S. 1, 54 L. Ed. 355; McCall Co. v. Stiff Dry Goods Co. (Tex. App.), 142 S. W. 659; Vulcan Steam Shovel Co. v. Flanders, 205 Fed. 102; Security State Bank v. Simmons, 251 Mo. 2, 157 S. W. 585; International Text-Book Co. v. Gillespie, 229 Mo. 397, 129 S. W. 922; Corn Products Mfg. Co. v. Western Candy & Bakers Supply Co., 156 Mo. App. 139, 135 S. W. 985; Koenig v. Boat Mfg. Co., 155 Mo. App. 685, 135 S. W. 514; Chuse Engine & Mfg. Co. v. Vromania Apartment Co., 154 Mo. App. 139, 133 S. W. 624; Kirkeby & Gundestrup Seed Co. v. White, 168 Mo. App. 626, 153 S. W. 279; International Text-Book Co. v. Pigg, 217 U. S. 91, 54 L. Ed. 678, 27 L. R. A. (N. S.) 493.

The cases defendants rely on are plainly distinguishable from those cited above and the one at bar. In Pope-Turnbo v. Bedford, 147 Mo. App. 692, 127 S. W. 426, the facts show an intrastate transaction between citizens of Missouri and therefore subject to the local State laws. In Amalgamated Zinc and Lead Co.

v. Bay State Zinc Min. Co., 221 Mo. 7, 120 S. W. 31, a foreign corporation operated a mine under a lease, and the contract was to be wholly performed in the State of Missouri, and hence was intrastate business. The case of State ex inf. Hadley v. Standard Oil Company, 218 Mo. 1, 116 S. W. 902, was a proceeding to revoke the license of foreign corporations that had violated our laws and they were confessedly doing business in Missouri with offices maintained here. The case of State ex inf. Crow v. Insurance Co., 152 Mo. 1, 52 S. W. 595, does not involve the question of interstate commerce. In Parke, Davis & Co. v. Mullett, 245 Mo. 168, 149 S. W. 461, it was admitted that a part of the business was transacted in Missouri by an office of the company maintained in Kansas City in this State and that that part of the business was intrastate. In United Shoe Machinery Co. v. Ramlose, 210 Mo. 631, 109 S. W. 567, the opinion shows that the contract was to be fully performed in Missouri and that the corporation there maintained an agent who had charge of its office in this State from which the business was done. The opinion clearly shows that the business transacted was intrastate concerning the contract there under consideration. The defense in the case of Continental Wall Paper Co. v. Louis Voight & Sons Co., 212 U. S. 227, 53 L. Ed. 486, was based on the Federal anti-trust statutes and does not deal with State laws. Lastly, defendants rely on the case of Orr's Admr. v. Orr (Ky. App.), 163 S. W. 757, where the plaintiff in our case was the claimant for a sum of money in a claim filed against the estate of one who had made a contract with it in some respects similar to the one we have under consideration. The facts of that case, however, as gathered from the opinion, clearly show that the claimant, The J. R. Watkins Medical Company, appointed an agent in Tennessee to sell its goods, and that while this agent guaranteed payment for all he sold, still the claimant kept a branch

office in Memphis, Tenn., and all the orders of its traveling salesmen were sent to Memphis and were accepted and filled in Memphis. While the opinion shows that the claimant said the goods were shipped f. o. b. Winona, Minn., yet the opinion further shows that they were shipped to the claimant's branch office which it maintained in Memphis, and that the distribution to its agent took place in the State of Tennessee. The evidence shows, according to that opinion, that the party receiving the goods was by the terms of the contract and by a letter appointed and called its traveling salesman and referred to the agency, and in this connection, with the further evidence that it maintained a branch office in Tennessee from which it distributed to its agent its merchandise, clearly distinguishes the character of the transaction in that case from the one under consideration.

The contract in our case is not one that is unenforcible by reason of the defenses set up in defendants' answer under the facts hereinbefore referred to.

For the reasons herein appearing the judgment is reversed and the cause remanded. *Robertson, P. J.,* and *Sturgis, J.,* concur.